1
2
3
4
5
6
7                       UNITED STATES DISTRICT COURT

8                       EASTERN DISTRICT OF CALIFORNIA

9

10   KEVIN HAGAN,                          Case No. 1:22-cv-00562-JLT-EPG

11                  Plaintiff,             FINDINGS AND RECOMMENDATIONS
                                           RECOMMENDING THAT DEFENDANTS'
12          v.                             MOTION TO DISMISS PLAINTIFF'S THIRD
                                           AMENDED COMPLAINT BE DENIED
13   RAUL RECAREY, *et al.*,
                                           (ECF No. 43)
14                  Defendants.
                                           FINDINGS AND RECOMMENDATIONS
15                                         RECOMMENDING THAT PLAINTIFF'S
                                           REQUEST FOR A TEMPORARY
16                                         RESTRAINING ORDER AND/OR
                                           PRELIMINARY INJUNCTION BE DENIED
17

18                                         (ECF No. 29-2).

19                                         OBJECTIONS, IF ANY, DUE IN THIRTY (30)
                                           DAYS
20

21          Kevin Hagan ("Plaintiff") is a state prisoner proceeding with counsel in this civil rights

22   action filed pursuant to 42 U.S.C. § 1983.

23          Plaintiff's Third Amended Complaint alleges that Defendants J. Sandhu, H. Longia, M.

24   Son, J. Mevi, and H. Eskander, who are all physicians at Valley State Prison ("VSP"), failed to

25   provide Plaintiff with medical treatment that is needed to address his chronic back pain, including

26   a surgery that was recommended by an outside specialist, adequate pain management, medical

27   tests, and referrals. (*See* ECF No. 29). Based on these allegations, Plaintiff asserts claims under

28   the Eighth Amendment for deliberate indifference to a serious medical need against Defendants

Sandhu, Longia, Son, Mevi, and Eskander. (*Id.* at 20-22). Plaintiff also asserts state law claims for medical negligence against Defendants Son, Mevi, and Longia. (*Id.* at 22-23). Additionally, Plaintiff requests preliminary injunctive relief and asks the Court to order that Plaintiff receive the recommended back surgery and adequate pain management. (*See* ECF No. 29-2).

Defendants move to dismiss Plaintiff's TAC pursuant to Federal Rule of Civil Procedure 12(b)(6) and oppose Plaintiff's request for preliminary injunctive relief. (ECF No. 43). The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the following reasons, the Court recommends that Defendants' motion to dismiss be denied. The Court also recommends that Plaintiff's request for preliminary injunctive relief be denied.

## I.      PROCEDURAL BACKGROUND

Plaintiff filed the complaint commencing this action on May 9, 2022. (ECF No. 1). On September 20, 2022, Plaintiff filed his First Amended Complaint, alleging claims against certain CDCR officials and physicians, including Dr. Son, Dr. Mevi, and Dr. Longia. (ECF No. 18).

The Court screened Plaintiff's FAC and issued an order finding that Plaintiff stated cognizable claims against "defendants Dr. Son, Dr. Longia, and Dr. Mevi for deliberate indifference to a serious medical need in violation of the Eighth Amendment and for negligence in violation of state law." (ECF No. 21 at 2). As to Plaintiff's Eighth Amendment claims, the Court specifically found as follows:

> Here, Plaintiff alleges that Dr. Son was aware that Dr. Yoo recommended that
> Plaintiff receive back surgery in both 2016 and 2018. Plaintiff also alleges that Dr.
> Son was aware that Plaintiff was in severe pain and that Plaintiff had received
> methadone and Lyrica in the past. Despite Dr. Son's knowledge of Plaintiff's
> medical history, Dr. Son repeatedly failed to request that Plaintiff receive the
> recommended surgery or prescribe Lyrica, morphine, or methadone. Moreover,
> while Plaintiff was receiving care from Dr. Son, an orthopedic surgeon
> recommended further treatment—including scans, studies and surgery—which Dr.
> Son declined to follow. Similarly, Plaintiff alleges that Dr. Longia repeatedly
> denied Plaintiff's requests for specific pain medication, medical procedures,
> orthopedic devices, surgeries, accommodations, and referrals when reviewing
> Plaintiff's multiple grievances regarding Dr. Son. Regarding Dr. Mevi, Plaintiff
> alleges that Dr. Mevi was aware of Plaintiff's history of chronic back pain, but
> failed to recommend narcotics to manage Plaintiff's pain and improperly
> discharged Plaintiff from the Outpatient Housing Unit because Plaintiff was
> complaining about the inadequate treatment. Moreover, Plaintiff only received
> some of the requested medical treatment (a nerve study, prescription for Lyrica
> when the nerve study indicated nerve damage, a CT scan, and MRI) after those

2

requests were denied at several levels of review.

(*Id.* at 11-12). However, the Court found that Plaintiff failed to state cognizable claims against the other individuals named as defendants. (*Id.* at 2). The Court granted Plaintiff leave to file an amended complaint. (*Id.*)

On February 2, 2023, Plaintiff filed his Second Amended Complaint. (ECF No. 22). However, the parties filed a stipulation for Plaintiff to file a Third Amended Complaint "removing S. Gates and adding Defendant C. Eskander, and renewing his request for injunctive relief." (ECF No. 24). The parties filed a second stipulation to extend the deadline for Plaintiff to file his TAC. (ECF No. 27). The parties' stipulation provided that Defendants would "request screening of the Third Amended Complaint within fourteen (14) days of its filing" and file an "answer to the Third Amended Complaint sixty (60) days after the new defendants' notice of intent to waive service[.]" (*Id.* at 3). The Court approved the parties' stipulation. (ECF No. 28).

Plaintiff filed his Third Amended Complaint on June 6, 2023, and request for preliminary injunctive relief. (ECF Nos. 29, 29-2). On September 1, 2023, the Court granted Defendants request for an extension of time to respond to Plaintiff's TAC. (ECF No. 40).

On September 28, 2023, Defendants filed a motion to dismiss Plaintiff's TAC and Plaintiff's request for preliminary injunctive relief. (ECF No. 43). The Court held a scheduling conference on October 5, 2023. (ECF No. 45). Following the conference, the Court set a briefing schedule and vacated the hearing on the motion. (ECF No. 46). The Court also opened limited discovery as to all claims and all Defendants, except for depositions. (*Id.* at 2).

On October 26, 2023, Plaintiff filed his opposition to Defendants' motion. (ECF No. 47). Defendants filed a reply and request for judicial notice on November 7, 2023. (ECF Nos. 48, 49).

## II.  PLAINTIFF'S THIRD AMENDED COMPLAINT

Plaintiff alleges that Defendants failed to order a surgery recommended by an outside specialist to address his back condition, failed to prescribe adequate pain management that sufficiently addresses his severe back pain, and improperly denied Plaintiff's requests for certain accommodations, medical tests, and referrals. (*See* ECF No. 29). Plaintiff's TAC includes a factual background of Plaintiff's medical history before and after his confinement at VSP. (*Id.* at

3-19). Plaintiff's factual background refers to 55 separate exhibits, totaling almost 200 pages.[1] (*See* ECF No. 29-5).

### A.   Plaintiff's Past Medical History

As alleged in Plaintiff's complaint, Plaintiff has a history of chronic back pain and surgical intervention, including a back surgery that involved inserting hardware into Plaintiff's spine. (ECF No. 29 at 3). In 2016, several years before Plaintiff was transferred to VSP, it was documented that the hardware was in the incorrect place. (*Id.* at 3) (quoting Pl. Ex. P) ("Plaintiff was 'seen by neurosurgeon 5/19/2016 and was noted to have L5 screw that seems to be in the lateral recess [space in spinal canal toward the sides] where the traversing S1 nerve root <u>should be</u>, and compression deformity at L1.'") (emphasis in original).

Plaintiff alleges that an outside specialist, Dr. Yoo, recommended that Plaintiff receive a surgery to remove the hardware in July 2016. (*Id.* at 4) (citing Pl. Ex. A, J). Specifically, Plaintiff alleges that Dr. Yoo agreed "to remove the hardware: L3 to ilium (large broad bone forming upper part of each half of pelvis) posterior instrumentation (placement of screws and rods) and L2-3 bilateral laminotomies (removal of roof of spinal canal)." (*Id.*)

Dr. Santos, a physician at Richard J. Donovan Correctional Facility, followed up with Plaintiff after his visit with Dr. Yoo and noted that Plaintiff understood "any further surgery may not be of any benefit to him, but he is so miserable that he has attempted suicide and would like to proceed with surgery" and that "there might be a minimal possibility of only getting a small fraction of his pain resolved (less than 20%)." (*Id.* at 4-5) (citing Pl. Ex. J). After Dr. Santos reviewed Plaintiff's June 2016 MRI, which showed "no evidence of solid fusion between the vertebral bodies, L2-3 spinal canal and lateral recess stenosis with impingement (rubbing or pressure) of the traversing L3 nerve roots bilaterally, and left L5 neural opening narrowing with equivocal nerve root impingement, Plaintiff alleges that Dr. Santos requested authorization for the

---

[1] These exhibits include Plaintiff's inmate requests and grievances (Pl. Ex. D, F, AM, AR, AT, AX, AY, AZ, BB), prison physician requests for services (Pl. Ex. P, Q, R, S, T, U, V, W, X, Z, AA, AB), prison medical records (Pl. Ex. AF, AG, AI, BC), outside medical records (Pl. Ex. A, H, J, K, Y, AC, AD, AE, AH, BA), institutional health care responses from when Plaintiff was confined at Richard J. Donovan Correctional Facility (Pl. Ex. B, C) and VSP (Pl. Ex. E, G, I, L, M, N, AJ, AK, AL, AN, AO, AS, AW), and reasonable accommodation requests and panel responses (Pl. Ex. O, AO, AP, AU, AV).

following surgery:

> (1) Removal of all posterior instrumentation to give Plaintiff some back pain relief and definite relief of leg pain, (2) decompressive procedure with laminotomies to give him leg pain relief and possibly back pain relief, and (3) if need be, anterior lumbar interbody fusion and perhaps sacroiliac-iliac posterior fusion. (Exhibit J).

(*Id.* at 5) (citing Pl. Ex. J); " (*Id.* at 4) (citing Pl. Ex. AD, A, J).  Dr. Santos's request was denied in early January 2017. (*Id.* at 5) (citing Pl. Ex. R).

Plaintiff further alleges that in May 2018, after MRI imaging showed further degeneration of Plaintiff's lumbar spine, Dr. Santos made a second request for the neurosurgery advised by Dr. Yoo. (*Id.* at 6) (citing Pl. Ex. AH, W).

In June 2018, Plaintiff alleges that Dr. Yoo revised his surgery recommendation "to a lateral L3- L4 lumbar interbody fusion and posterior instrumented fusion with decompression and possible hyperlordotic (excessive curving inward) graft at L2-L3 to give him some back lordosis." (*Id.*) (citing Pl. Ex. Y, Z). Plaintiff alleges that this surgery was approved by another CDCR physician, Dr. Roberts, but that IVMC[2] denied the surgery in August 2018. (*Id.* at 7) (citing Pl. Ex. X, AA).[3]

Plaintiff alleges that, at other state prisons, he was previously prescribed Lyrica, morphine, methadone, gabapentin (which was tapered off in March 2019), duloxetine (nerve pain medication), ibuprofen, Tylenol, and nortriptyline (nerve pain medication). (*Id.* at 4, 7-9) (citing Pl. Ex. B, C, F, P). Plaintiff alleges the "morphine was discontinued because of <u>possible</u> drug diversion." (*Id.* at 3) (citing Pl. Ex. P). Plaintiff also alleges the methadone slightly reduced his pain, from a level 10 to a level 7, but that it was discontinued per his request because of the side effects. (*Id.* at 7) (citing Pl. Ex. C). Plaintiff alleges that his pain returned to at least a level 8 after he went off methadone. (*Id.*) Plaintiff alleges that he thought he would be placed on something else after he was taken off methadone. (*Id.* at 20-21). In May 2019, Plaintiff alleges that he

---

[2] Defendants' motion asserts that "IVMC" refers to Inland Valley Medical Center, an outside medical center. (*See* ECF No. 43 at 10, 9 n.3) (citing to ECF No. 29 at 54, 71, 74).

[3] Defendants' motion asserts that "a surgery recommendation was issued sometime between April and June 2018—during the time when Plaintiff was under the care of Defendant Dr. Son—but it was denied on June 22, 2018." (ECF No. 43 at 18 n.6) (citing ECF No. 29-5 at 25). However, this assertion appears to be incorrect as Plaintiff alleges that he was transferred to Salinas Valley Prison after the surgery was denied in August 2018. (*See* ECF No. 29 at 7).

"refused physical therapy because it was too painful." (*Id.*) (citing Pl. Ex. B, G). In July 2019, after he was not prescribed narcotics, Plaintiff alleges that, "in desperation, [he] agreed to take ibuprofen and nortriptyline[.]" (*Id.* at 8) (citing Pl. Ex. B).

### B.    Plaintiff's Medical Treatment History Since Confined at VSP

Plaintiff was transferred to VSP sometime between July 2016 and January 2020. (ECF No. 29 at 8-9). Plaintiff alleges that "[e]ver since he was transferred to VSP, Plaintiff's pain has continued, but he has not gotten pain medication or the surgery." (*Id.*)

After Plaintiff was transferred to VSP, Plaintiff alleges that Dr. Son initially refused to prescribe Plaintiff pain medication in January 2020. (*Id.* at 9) (citing Pl. Ex. G). Plaintiff filed a grievance regarding this visit where he mentioned that he had previously been prescribed Lyrica, a nerve study in 2014, and that a specialist had suggested he needed surgery. (*Id.*) (citing Pl. Ex. F). Plaintiff alleges that, when reviewing Plaintiff's grievances, Dr. Longia also improperly denied Plaintiff's request for surgery and pain medication:

> [Dr. Longia] wrongly stated that Plaintiff reported no sleep interruptions due to pain, performed his activities of daily living, and was able to pick up clothes from the floor and pull them back up. He could pick up clothes and pull them back up one time but cannot keep doing that. He also wrongly wrote that Plaintiff had good lateral flexion and rotation movement. He correctly stated that the extension limitations are most likely from instrumentation laminectomies. Also, he stated that Plaintiff performed a straight leg raising test with no reproducible symptoms, but Plaintiff does not remember that. He denied Plaintiff's request for pain medication or surgery.

(*Id.* at 9-10) (citing Pl. Ex. G). Plaintiff alleges that "[i]nstrumentation laminectomies are often the result of hardware, which Dr. Yoo advised Plaintiff have surgery to get removed." (*Id.* at 10) (citing Pl. Ex. A).

In February 2020, Plaintiff alleges that Dr. Son "advised Plaintiff to complete physical therapy, and then his case may be referred to the Pain Management Committee (PMC)." (*Id.* at 9) (citing Pl. Ex. G).

Plaintiff alleges that he saw Dr. Son again in April 2020, where it was documented that he was taking ibuprofen and amitriptyline (nerve pain medication), but that Dr. Son failed to document a "medical indication for back surgery or additional medications." (*Id.* at 10) (citing Pl. Ex. E). In July 2020, Plaintiff alleges he requested "a referral for spinal surgery, orthotic shoes,

hardware removal from his left thigh bone, pain medication, and physical therapy" from Dr. Son but that Dr. Son refused to prescribe Lyrica, morphine, and methadone. (*Id.* at 10-11) (citing Pl. Ex. L). Instead, Plaintiff alleges that Dr. Son only ordered ibuprofen. However, Plaintiff alleges that Dr. Son requested an orthopedic surgeon and ordered an x-ray of Plaintiff's left thigh bone. (*Id.*) Plaintiff alleges that Dr. Son denied his request for orthotic footwear because Plaintiff cannot walk. (*Id.*)

In August 2020, it was documented that Plaintiff had been on pain medications for two years. (*Id.* at 11) (citing Pl. Ex. O).

At some point, Dr. Son requested that an orthopedic surgeon evaluate Plaintiff's back condition. (*Id.* at 10) (citing Pl. Ex. L). Plaintiff alleges that he was seen by Dr. Farr, a board-certified orthopedic surgeon with a fellowship in spine surgery on August 28, 2020. (*Id.*) (citing Pl. Ex. H and AB). As alleged in Plaintiff's complaint, Dr. Farr made the following recommendations and findings:

> 64. Dr. Farr documented stenosis (a medical condition where the spinal canal narrows and compresses the nerves and blood vessels at the level of the lumbar vertebrae) at the L2-L3 level with prior fusion at the L3-L4, L4-L5, and L5-S1. He documented that Plaintiff has difficulty with his walking pattern, using a wheelchair and an assistive device for walking. He recommended repeat MRI, most likely extending the fusion at L2-L3, that hardware removal could be helpful; Plaintiff needs an Electromyography ("EMG") nerve conduction study (measures muscle response to a nerve's stimulation of the muscle). He also believed that Plaintiff will eventually need a spinal cord stimulator (device that sends low levels of electricity into the spinal cord to relieve pain). For now, a CT scan of the lumbar to confirm there is actual fusion taken place before removing the hardware.

(*Id.* at 12) (citing Pl. Ex. H). After his visit with Dr. Farr, Plaintiff alleges that he saw Dr. Son for follow-up in September 2020. (*Id.*) (citing Pl. Ex. L). However, "Dr. Son noted that Plaintiff has a history of seven back surgeries, and there is a high risk of worsening back issues with additional surgeries and low potential for improvement." (*Id.*) At this visit, Plaintiff alleges that Dr. Son continued to conservatively manage Plaintiff's pain with Motrin and Tylenol, and "declined to follow through with Dr. Farr's order for a CT scan and nerve study." (*Id.* at 12) (citing Pl. Ex. N). Plaintiff further alleges that "[o]n at least one occasion each, Dr. Son kicked Plaintiff out of the doctor's office because he was complaining of pain." (*Id.* at 17).

In November 2020, Plaintiff alleges that Dr. Longia denied Plaintiff's "request for spinal

surgery, Lyrica, orthopedic footwear, removal of the femur screw, and accommodations." (*Id.* at 13) (citing Pl. Ex. L). Plaintiff also submitted a Reasonable Accommodation request "asking for surgery because his constant shoulder pain makes using the bathroom hard." (*Id.*) (citing Pl. Ex. AO).

Plaintiff also alleges that while confined at VSP he has received Capsaicin cream, ketorolac injections (which Plaintiff alleges are not supposed to be done longer than 5 days), and gabapentin (which he was placed on in February 2021). (*Id.* at 12-14) (citing Pl. Ex. N, M, AS).

In January 2021, Plaintiff alleges that Dr. Longia denied his request to be seen by the Pain Management Committee for adequate pain medications and his request for accomodations. (*Id.* at 13) (citing Pl. Ex. N).

Plaintiff alleges that he was admitted to the Outpatient Housing Unit between February 24, 2021, and April 5, 2021. (*Id.* at 14-15) (citing Pl. Ex. AS). While admitted at the OHU, Plaintiff was seen by Dr. Mevi. (*Id.*) Plaintiff alleges that Dr. Mevi noted Plaintiff's "long history of chronic lower back pain status post L2-3 fusion and the significant narcotics he was given while in the acute care hospital with COVID-19, pneumonia, and respiratory failure." (*Id.* at 14) (citing Pl. Ex. AS). Plaintiff alleges that Dr. Mevi told him that "narcotics are not indicated for pain management." (*Id.*) Instead, Plaintiff alleges that Dr. Mevi ordered Plaintiff Naproxen and Tyelnol to manage his lower back pain. (*Id.*) Plaintiff alleges that Dr. Mevi "denied Plaintiff's requests for medication, a specialty referral, shoulder surgery, and accommodations." (*Id.* at 15) (citing Pl. Ex. AN). Plaintiff alleges that Dr. Mevi "kicked [Plaintiff] out [of OHU] for complaining about his back pain and not receiving adequate medication." (*Id.* at 15) (citing Pl. Ex. As). Plaintiff also alleges that Dr. Mevi improperly denied Plaintiff x-rays and a nerve study. (*Id.* at 21).

Plaintiff alleges that he filed several grievances regarding his severe pain and requests for pain medication between February 2021 and May 2021. (*See id.* at 14-16) (citing Pl. Ex. AR, AV, AT, AS, AX).

Plaintiff alleges that he was "immediately placed on Lyrica" in June 2021 after a nerve study determined that Plaintiff had nerve damage. (*Id.* at 17) (citing Pl. Ex. AQ). Plaintiff alleges that a CT scan and MRI were performed in March 2022. (*Id.*) (citing Pl. Ex. AW).

At some point, Plaintiff was also placed on Tramadol. (*See id.*at 18). However, Plaintiff alleges that, in October 2022, Dr. Mevi reduced his Tramadol and also increased Plaintiff's duloxetine "without telling Plaintiff of the change." (*Id.* at 18) (citing Pl. Ex. AY).

Further, Plaintiff alleges that Dr. Yoo made a third recommendation for surgery on January 26, 2023:

> On January 26, 2023, Plaintiff had another appointment with Dr. Yoo. (Exhibit BA). Dr. Yoo reported that Plaintiff remains "highly symptomatic with adjacent disc disease at L2-3" and requested authorization for "L2-3 lateral lumbar interbody fusion, T9 to pelvis posterior instrumented fusion, L1-2 and L2-3 laminectomies." He also stated Plaintiff should "have optimization of his pain meds as the radiographic studies indicate he be in significant pain." (Exhibit BA).

(*Id.* at 18) (citing Pl. Ex. BA).

Plaintiff alleges that Dr. Eskander tried putting Plaintiff on Suboxone. (*Id.* at 19) (citing Pl. Ex. BB). However, Plaintiff alleges that he stopped taking the medication after three weeks due to the bad side effects. (*Id.*) Plaintiff alleges that Dr. Eslander saw him again in March 2023 but did not order further pain management "despite knowing about Plaintiff's excruciating pain." (*Id.* at 19). Plaintiff alleges that, despite reporting his pain as ranging from 8-10 out of 10, Dr. Eskander never ordered the surgery. (*Id.* at 18) (citing Pl. Ex. AZ, BB).

Plaintiff further alleges that Dr. Sandhu is aware of Plaintiff's severe pain but that Dr. Sandhu has not ordered further pain management "beyond Tylenol and Capsaicin." (*Id.* at 19). Plaintiff alleges that Dr. Sandhu has also failed to order the surgery requested by Dr. Yoo. (*Id.* at 19).

## III.    DEFENDANT'S MOTION TO DISMISS

### A.    Defendants' Position

Defendants chiefly argue that Plaintiff fails to state a claim under the Eighth Amendment because the exhibits attached to the TAC contradict or undermine Plaintiff's allegations of deliberate indifference. (ECF No. 43 at 8). As for Plaintiff's allegations that Defendants have improperly refused to approve or order the recommended back surgery, Defendants contend the institutional health care responses and medical records submitted by Plaintiff demonstrate that Defendants' refusal to request or approve the back surgery is based on a "mere difference in opinion" as to whether the surgery is appropriate given Plaintiff's medical condition and history.

1   (*Id.* at 18-19). Defendants also argue that Plaintiff's allegations that Defendants have failed to
2   provide him with adequate pain medication to manage his chronic back pain are contradicted by
3   the record of extensive pain management treatment received by Plaintiff while under Defendants'
4   care, as well as the fact that certain medications, like morphine or other opioids, are not medically
5   indicated given Plaintiff's history of drug use nor recommended by federal guidelines regarding
6   chronic pain care. (*Id.* at 19-20). Alternatively, Defendants argue they are entitled to qualified
7   immunity on Plaintiff's Eighth Amendment claims. (*Id.* at 25-26).

8   Defendant also argues that Plaintiff's official-capacity claim against Dr. Sandhu is barred
9   by the Eleventh Amendment because Dr. Sandhu does not have authority to order that the back
10  surgery be performed and because Plaintiff does not specify what different pain medication
11  should be prescribed. (*Id.* at 23-24). According to Defendants' motion, "a surgery requested by a
12  prison doctor must: (1) be referred to and evaluated by an outside specialist; and (2) approved by
13  the medical center where the surgery will take place." (*Id.* at 24). For those same reasons,
14  Plaintiff's request for injunctive relief should also be denied. (*Id.*)  Defendant's reply further
15  asserts that Plaintiff's claim for injunctive relief is now moot as, according to CDCR's online
16  inmate tracker, Plaintiff is no longer confined at VSP. (ECF No. 48 at 7-8).

    As for Plaintiff's state law claims against Dr. Longia, Dr. Mevi, and Dr. Son, Defendants
17  argue Plaintiff fails to state a claim for medical negligence because Plaintiff's allegations are
18  insufficient to establish that Defendants breached any duty or are the proximate cause of
19  Plaintiff's back pain.[4] (*Id.* at 21- 22). Additionally, Defendants' reply argues these claims are
20  subject to dismissal because Plaintiff failed to comply with the claim presentation requirements of
21  the California Government Claims Act. (ECF No. 48 at 4-5). In support of this argument,
22  Defendants filed a request for judicial notice of the government claims record that Plaintiff
23  alleges he filed to exhaust his remedies under state law. (ECF No. 49).

24  Finally, Defendants argue that Plaintiff should not be granted leave to amend because
25  Plaintiff's "failure to state a federal constitutional claim and the Defendants' entitlement to
26  qualified immunity cannot be cured by the allegation of additional facts." (ECF No. 43 at 27).

27  ---
28  [4] Defendants also argue that, should Plaintiff's Eighth Amendment claims be dismissed, Plaintiff's state
    law claims must be dismissed as well. (ECF No. 43 at 20-21).

1

**B.      Plaintiff's Position**

2

Plaintiff argues the TAC states a claim under the Eighth Amendment for deliberate

3

indifference to a serious medical need based on Plaintiff's allegations that Defendants "den[ied]

4

Plaintiff access to medical personnel with specialized expertise," "den[ied] Plaintiff adequate pain

5

medications," and by "failing to conduct tests [Plaintiff's] symptoms call for." (ECF No 47 at 15-

6

16). Because Plaintiff states a claim for deliberate indifference, he argues that he has also stated a

7

claim for medical malpractice. (*Id.* at 24).

8

Plaintiff argues that he included exhibits as reference for his claims and "*not* to attest that

9

their every word is accurate." (EC No. 47 at 19). Plaintiff argues that the general rule regarding

10

contradictory exhibits "does not require that Plaintiff adopt every word said by other people in the

11

exhibits." (*Id.*) Plaintiff points to multiple places in the TAC where he cited exhibits as evidence

12

of false statements. (*Id.*) (citing ECF No. 29 at 8, 9-10, 19, and referring to Pl. Ex. B, G, AY). If

13

necessary, Plaintiff requests leave to amend so that he may disavow specific parts of the exhibits.
(*Id.*)

14

As for Plaintiff's request for preliminary injunctive relief, Plaintiff argues that he will be

15

irreparably harmed if his back pain continues to go untreated. (*Id.* at 25-26). Plaintiff further

16

contends that the burden in not having his severe pain "adequately managed far outweighs Dr.

17

Sandhu's burden of providing adequate medical care." (*Id.* at 26). Plaintiff argues his requested

18

relief is "narrowly drawn and would not interfere with the prison administration." (*Id.*)

19

**IV.      MOTION TO DISMISS LEGAL STANDARDS**

20

In considering a motion to dismiss, the Court must accept all allegations of material fact in

21

the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "[T]he court must construe

22

the complaint in the light most favorable to the plaintiff, taking all [of the plaintiff's] allegations

23

as true and drawing all reasonable inferences from the complaint in [the plaintiff's] favor." *Doe v.*

24

*United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

25

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the

26

complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The first step in testing the

27

sufficiency of the complaint is to identify any conclusory allegations. *Id.* at 679. "Threadbare

28

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Generally, the court considers only the complaint and any exhibits to the complaint when deciding a motion to dismiss. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Branch v. Tunnel*, 14 F.3d 449, 453-54 (9th Cir. 1994) ("[W]e hold that documents whose contents are alleged in a complaint and whose authenticity no party questions. . . may be considered in ruling on a Rule 12(b)(6) motion to dismiss."); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Thus, allegations that are contradicted by exhibits can be rejected, i.e., a party can "plead himself out of a claim" by including information in complaint or exhibits that negates allegations. *Sprewell*, 266 F.3d at 988. In addition, "a court may take judicial notice of matters of public record." *Lee*, 250 F.3d 668 at 689 (internal quotation marks omitted). Finally, the court may also consider "unattached evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020) (quoting *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011)).

## V.     EIGHTH AMENDMENT DELIBERATE INDIFFERENCE

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff

to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).

Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). "The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (citations omitted).

"Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d. at 1060. Civil recklessness, i.e., the failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known," is insufficient to establish an Eighth Amendment violation. *Farmer*, 511 U.S. at 836-37 & n.5 (citations omitted). Thus, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

A "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nevada Bd. of State Prison Com'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Additionally, "[a] difference of opinion between an inmate and prison medical personnel—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014); *Toguchi*, 391 F.3d at 1058. To establish a difference of

opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

### A.    Analysis of Plaintiff's Deliberate Indifference Claims

As an initial matter, Defendants do not contest that Plaintiff's severe back pain constitutes a serious medical need. Here, Plaintiff's allegations of extreme suffering and pain due sufficiently allege that Plaintiff has a serious medical need. condition. *See Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (internal quotation marks and citation omitted) ("[T]he existence of chronic and substantial pain indicates that a prisoner's medical needs are serious[.]").

The issue presented by Defendants' motion to dismiss is whether the exhibits submitted by Plaintiff, which include prison physician requests for services, medical records, institutional health care responses, and reasonable accommodation requests and panel responses, contradict Plaintiff's allegations of deliberate indifference. (ECF No. 43 at 8).

### 1.    Plaintiff's Back Surgery Allegations

Defendants argue the exhibits attached to Plaintiff's TAC demonstrate that the refusal to follow the surgery recommendations that Plaintiff received from Dr. Santos and Dr. Yoo is based on a difference in medical opinion as to the risks involved in such a surgery. Defendants generally argue the refusal to order or approve the surgery is supported by medically acceptable reasons, i.e., that Plaintiff is a poor candidate for back surgery, the risks of the surgery outweigh any benefits, Plaintiff's pain is otherwise conservatively managed, and Plaintiff refuses to do physical therapy.

As discussed above, a difference of opinion as to which medically acceptable course of treatment should be followed does not establish deliberate indifference. *See Snow*, 891 F.2d at 987. However, there are limits to the "difference-of-opinion rule," and "[p]rison officials cannot avoid Eighth Amendment liability by simply declaring that they disagree with a specialist's or treating doctor's prescribed course of care." *Miller v. California Dep't of Corr. & Rehab.*, No. 16-cv-02431-EMC, 2018 WL 534306, at * 11 (N.D. Cal. Jan. 24, 2018) (citing *Snow*, 681 F.3d 978).

In *Snow*, a prison medical committee repeatedly refused to authorize a double hip-replacement surgery, even though an orthopedic surgeon and the prisoner's treating physician

considered the requested surgery to be an emergency. *See Snow*, 681 F.3d at 986. The medical

committee "gave no medical reason for the denials" and some evidence supported the inference

that the refusal was based on the warden's dislike of death row inmates such as the plaintiff. *Id.* at

986-87. The prison medical officials argued that their decision to treat the prisoner with

medications rather than surgery demonstrated a mere difference of opinion that was not

actionable under the Eighth Amendment. *Id.* at 987-88. However, the Ninth Circuit determined

the district court erred in granting summary judgment for defendants based on the difference-in-

opinion rule:

> There is clearly a difference of medical opinion here. On the one hand, physicians
> often attempt non-surgical interventions to address hip pain. The NDOC
> physicians on the URP, who are all board-certified in family medicine or other
> similar disciplines, decided to treat Snow's hip pain and immobility with
> medication instead of surgery. This persisted for several years. The NDOC
> physicians adjusted the medications to increasingly rely on narcotics when
> Snow's creatinine levels rose to dangerous levels. On the other hand, from 2007
> through 2009 two orthopedic specialists and Snow's NDOC treating physician
> recommended bilateral THA surgery.

> The defendants argue that this was merely a difference of opinion that cannot
> amount to deliberate indifference. We disagree. Based on the unchallenged
> medical records and inferences drawn in favor of Snow, a reasonable jury could
> conclude that the decision of the non-treating, non-specialist physicians to
> repeatedly deny the recommendations for surgery was medically unacceptable
> under all of the circumstances.

> After Snow developed severe hip pain, the defendants eventually sent him for
> evaluation by orthopedic surgeons. Both specialists hired by the NDOC
> recommended bilateral THA surgery. One of the specialists, Dr. Rhodes, testified
> at his deposition that Snow's likelihood of success after a THA was very high, and
> that surgery would help improve Snow's health and mobility. And Dr. Rhodes
> testified that after surgery Snow's hip pain would probably disappear, and that
> Snow would no longer require any painkillers for his hips. Conversely, neither
> specialist recommended indefinite maintenance on NSAIDs, steroids, or narcotics.
> The record also shows that medications may have harmed Snow's kidneys, and
> that the narcotics did not alleviate Snow's significant mobility issues. In fact, Dr.
> Rhodes stated in January 2007 that there "is no option here other than surgery for
> relief." Because, on this record, it is a controverted issue of fact, it should be for
> the jury to decide whether any option other than surgery was medically acceptable.

> The defendants ignored outside expert advice, relying solely on their own medical
> judgment for three years before eventually approving surgery. They claim that the
> specialists did not explicitly recommend "immediate" surgery. While a
> medication-only course of treatment may have been medically acceptable for a
> certain period of time, the question remains whether it was medically unacceptable

> and subjectively reckless to ignore a "long term" recommendation for three years,
> or to ignore "emergency" and "urgent" requests for more than two years. These are
> jury questions.

*Id.* at 988-89.

In support of their argument, Defendants point to the fact that Plaintiff was diagnosed with failed back syndrome by the IVMC when denying Dr. Santos' request for surgery, and that even Dr. Yoo appeared to recognize there was only a small possibility the surgery would reduce Plaintiff's pain. (ECF No. 48 at 18) (citing to ECF No. 29-5 at 33, 71, 154). Defendants also cite to an institutional health response dated July 21, 2021, which asserts that Plaintiff's PCP noted on May 20, 2021, that Plaintiff has "a history of seven previous back surgeries" and is "a poor candidate for another back surgery." (*Id.*) (citing ECF No. 29-5 at 126). Defendants also point to the institutional health care responses to Plaintiff's grievances, which document Plaintiff's history of conservative pain management treatment and refusal to do physical therapy. (*Id.*) (citing ECF No. 29-5 at 8, 13, 18, 25, 42, 104, 108, 112, 119, 126, 134, 145, 155, 163, and 167).

However, Plaintiff's complaint disputes the accuracy of some of these health care responses. *See Simon v. City of Phoenix*, 436 F. App'x 756, 757 (9th Cir. 2011) ("disputed and inconsistent" statements attached to complaint "[d]id not warrant a contrary conclusion" as to plaintiff's allegations). Further, the Court "need not defer to the judgment of prison doctors or administrators." *Hunt v. Dental Dep't.*, 865 F.2d 198, 200 (9th Cir. 1989). Defendants essentially ask the Court to find that conclusory statements by unknown individuals that Plaintiff has "failed back syndrome" and that he is a "poor candidate for back surgery" sufficiently contradict Plaintiff's allegations of deliberate indifference despite the fact that a back surgery has been recommended several times over several years by one specialist, requested and ordered by two prison doctors, and indicated as likely necessary by a second specialist. *See Marron v. Saha*, No. 19-cv-1344-BAS (MSB), 2020 WL 2467062, at *5 (S.D. Cal. May 13, 2020) (finding cognizable Eighth Amendment claims and rejecting defendants' argument that plaintiff's exhibits of the CDCR's decisions not to intervene in response to plaintiff's grievances only demonstrated a difference in opinion between plaintiff and prison physicians), *report and recommendation adopted,* 2020 WL 3250705 (S.D. Cal. Jun. 16, 2020).

As demonstrated by *Snow*, a mere divergence in recommendations between medical

16

professionals does not constitute definitive proof of a difference-of-opinion as a matter of law. Rather, it is the nature of the conflicting recommendations in a particular case and circumstances. Here, as in *Snow*, Plaintiff alleges that he has received several recommendations, over a period of several years, for surgery to address his back condition. As Plaintiff alleges, the proposed surgery would include removing some hardware that has moved due to Plaintiff's prior back surgeries. Plaintiff alleges the most recent request for surgery from Dr. Yoo was issued while Plaintiff was under the care of Defendants at VSP in January 2023, and that Dr. Yoo noted that Plaintiff "remains highly symptomatic with adjacent disc disease." (ECF No. 29-5 at 170). Additionally, Plaintiff alleges that a second outside specialist, Dr. Farr, recommended in 2020 that it was "most likely" that Plaintiff would need surgery "to extend the fusion at LS-L3 area" and that "removal of the hardware could be helpful." (ECF No. 29 at 12). Moreover, as alleged in Plaintiff's complaint, he refused physical therapy due to pain. Plaintiff also alleges that he has filed several grievances regarding his pain and requests for surgery since arriving at VSP. However, despite knowing about the prior recommendations and Plaintiff's reports of pain, Plaintiff alleges that Defendants have denied his requests for a surgery or for a specialty orthopedics referral to address Plaintiff's conditions.[5]

The Court finds that Plaintiff's allegations against Defendants plausibly give rise to the inference that the failure to recommend, request, approve or order a surgery to address Plaintiff's back condition was medically unacceptable under the circumstances. It might be the case that, after fact and expert discovery, Plaintiff will not meet his burden to prove that Defendants' chosen course of treatment was medically unacceptable. However, at the pleading stage, and given the mixed and undeveloped record before the Court, it would be improper to make what would essentially amount to a decision on the merits as to whether Defendants' chosen course of

---

[5] As for Dr. Mevi, Plaintiff's complaint alleges that Dr. Mevi "denied Plaintiff's request for medication, a specialty referral, shoulder surgery, and accommodations." (ECF No. 29 at 15) (citing Pl. Ex. AN). Defendants contend this grievance is about an issue entirely distinct from Plaintiff's lower back pain, and that "Dr. Mevi denied the grievance, in part, because during an earlier medical encounter, Plaintiff revealed that there had been no 'acute changes in [his] pain pattern, any trauma or recent altercations.'" (ECF No. 43 at 13) (citing ECF No. 29-5 at 118-20). However, the institutional health care response for Plaintiff's grievance (#VSP HC 21000046) signed by Dr. Mevi also states "[i]t is noted that you have a history of seven back surgeries, and there is a high risk of worsening back issues with additional surgeries and low potential for improvement." (ECF No. 29-5 at 118-119). Thus, it appears that Dr. Mevi denied Plaintiff's request for back surgery and/or request to see a specialist.

1   treatment was medically unacceptable.

2   ### 2.   Plaintiff's Pain Treatment Allegations

3       Defendants contend the exhibits demonstrate that Plaintiff has received comprehensive

4   treatment while under Defendants' care, including "gabapentin, duloxetine, ibuprofen and

5   Tylenol, acetaminophen, nortriptyline, Lyrica, Motrin, capsaicin cream, ketorolac back injections,

6   lumbar spinal MRI, wheelchair, EMG, naproxen, omeprazole, [a] nerve study, physical therapy,

7   neurosurgery consultation, tramadol, and suboxone." (ECF No. 43 at 19) (internal citations

8   omitted). Defendants characterize Plaintiff's allegations that he has not been provided adequate

9   pain management as a difference in opinion between Plaintiff and Defendants over whether

10   narcotics are medically indicated. According to Defendants' motion, the decision not to prescribe

11   morphine or methadone is supported by Plaintiff's "history of methamphetamine abuse and

12   morphine diversion," the risk of respiratory depression posed by morphine, and the fact that

13   federal guidelines do not advise narcotics for chronic pain in non-cancer patients. (ECF No. 43 at

    19) (citing ECF No. 29-5 at 31, 50, 52, 76, 154).

14       In opposition, Plaintiff contends that he is not "insisting on opioids" as a treatment, but

15   rather "adequate pain medication for his medical history and pain levels." (ECF No 47 at 17-18).

16   Plaintiff argues the exhibits referred to by Defendants do not demonstrate a history of morphine

17   diversion and asserts that he has "seen an addiction specialist who has determined he does not

18   have an opioid disorder." (*Id.* at 18). Plaintiff requests leave to amend, if necessary, to include

19   such facts in this case. (*Id.*)

20       "[A] prisoner need not prove that he was completely denied medical care." *Snow*, 681

21   F.3d at 986 (quoting *Lopez*, 203 F.3d at 1132); *see also Edmo v. Corizon, Inc.*, 935 F.3d 757, 793

22   (9th Cir. 2019). Plaintiff can state a claim for deliberate indifference by sufficiently alleging that

23   Defendants denied, delayed or intentionally interfered with pain management treatment for

24   Plaintiff's condition, or that the way prison staff delivered medical care indicated deliberate

25   indifference. *See* Snow, 681 F.3d at 986. Further, continuation of an "ineffective treatment plan"

26   constitutes deliberate indifference even despite providing some treatment if the defendants

27   disregard a substantial risk of severe harm to plaintiff. *Edmo*, 935 F.3d at 793.

28       Here, Plaintiff alleges that the course of treatment prescribed by Defendants to manage

Plaintiff's chronic back pain has been largely ineffective to address his symptoms. Plaintiff alleges that his requests for sufficient medication, including specific requests for Lyrica, methadone, and morphine, were repeatedly denied by Dr. Son and Dr. Longia, even though they knew that Plaintiff had previously been prescribed Lyrica. Plaintiff further alleges that Dr. Mevi denied his requests for sufficient pain medication, despite knowing that Plaintiff had been administered narcotics in the past, and discharged Plaintiff from the Outpatient Housing Unit because Plaintiff was complaining about his back pain and inadequate pharmaceutical care.[6] Plaintiff also alleges that, beginning in January 2020, Dr. Son, Dr. Longia, and Dr. Mevi repeatedly denied Plaintiff's requests for medical testing, including a CT scan, X-ray, and nerve study. Plaintiff specifically alleges that once the nerve study was finally conducted, he was "immediately" placed on Lyrica in June 2021 to manage his nerve pain. Plaintiff also alleges that Dr. Longia denied Plaintiff's request for a referral to the Pain Management Committee. Plaintiff alleges that he filed multiple grievances regarding his continued pain and requests for pain medication, testing, and referrals. Further, Plaintiff alleges that Dr. Eskander failed to prescribe an alternative medication after Plaintiff stopped taking the suboxone Dr. Eskander had prescribed him due to the side effects. Plaintiff also alleges that Dr. Sandhu was aware of Plaintiff's high pain levels but has only prescribed Plaintiff Tylenol and Capsaicin cream.

While Plaintiff's exhibits show that some defendants have intermittently placed Plaintiff on Lyrica, gabapentin, and tramadol, Plaintiff alleges that he was not provided these medications until after he had filed several grievances regarding his pain. Furthermore, as Plaintiff alleges, the nerve study requested by Dr. Farr in August 2020 was not performed until June 2021. Additionally, Plaintiff alleges that Dr. Yoo, who had a long history of treating Plaintiff, endorsed Plaintiff's allegations of severe pain in January 2023 based on medical testing results.

In light of these factual allegations, the Court finds that Plaintiff sufficiently alleges that Dr. Son, Dr. Longia, and Dr. Mevi's overall delay in prescribing Plaintiff with stronger

---

[6] Defendants contend "the relevant exhibit cited in support of this allegation does not show that Dr. Mevi saw Plaintiff or discharged him from the Outpatient Housing Unit, or that the discharge followed Plaintiff's excessive complaints." (ECF No. 43 at 14) (citing ECF No. 29-5 at 133-35). However, as Plaintiff points out in opposition, the exhibit does not contradict Plaintiff's allegation that Dr. Mevi was motivated to discharge Plaintiff from care because of Plaintiff's complaint.

medication beyond over-the-counter medications and topical creams to address his pain was medically unacceptable. *See Jett*, 439 F.3d at 1096–98 (delay of treatment for serious medical need about which inmate filed medical slips and grievances can amount to deliberate indifference if the delay leads to further injury or unnecessary pain). As for Dr. Eskander, Plaintiff sufficiently alleges that Dr. Eskander's failure to prescribe additional medication, despite Plaintiff's reports of pain and medical history, was medically unacceptable.

For these reasons, and in light of the above legal standards, the Court finds that Plaintiff states a cognizable claim for deliberate indifference to a serious medical need under the Eighth Amendment. Thus, the Court will recommend that Defendants' motion to dismiss be denied to the extent that Defendants request dismissal of Plaintiff's Eighth Amendment claims.

### C.   Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether a defendant is entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *Pearson*, 555 U.S. at 232.

A Rule 12(b)(6) motion to dismiss should not be granted on the basis of qualified immunity unless a court "can determine, based on the complaint itself, that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (quotation omitted). The Ninth Circuit has noted that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018) (citing *Kwai Fun Wong v. United States*, 373 F.3d 952, 956-57 (9th Cir. 2004)). The Ninth Circuit has also observed that, by considering qualified immunity at the pleadings stage, "the courts may be called upon to decide far-reaching constitutional questions on a nonexistent factual record." *Kwai Fun Wong*, 373 F.3d at 957.

As explained above, the Court finds that Plaintiff states cognizable deliberate indifference claims against Defendants based on the failure to order, recommend, or request the recommended

back surgery, and based on the delay or failure to prescribe Plaintiff with effective treatment for his pain, including stronger medications like non-narcotic non-OTC medications such as Lyrica, gabapentin, and Tramadol.

Defendants argue they are entitled to qualified immunity because it not clearly established that prison doctors violate the Eighth Amendment "when, in their professional judgment, they opt for conservative treatment instead of requesting a surgery when the risks outweigh any benefits to the patient." (ECF No. 43 at 26). However, the only support Defendants offer for the assertion that the risks imposed by the surgery clearly outweighed any benefits in this case is a past statement by Dr. Yoo in 2016 and general conclusory comments set forth in the health care responses to Plaintiff's grievances. Plaintiff disputes the relevance of Dr. Yoo's statement in light of Dr. Yoo's subsequent recommendations in 2018 and 2023, and some of the factual bases set forth in the health care responses.

Moreover, Defendants argue that they are entitled to qualified immunity because they followed federal guidelines regarding the use of "non-opioid medication to treat chronic pain in non-cancer patient." (ECF No. 43 at 25-26). However, Plaintiff alleges deliberate indifference in the course of treatment prescribed by Defendants, which has been ineffective, including non-opioid non-OTC medicine. Defendants argue the course of treatment prescribed was medically acceptable. However, as discussed above, it is unclear at this early stage whether the decisions made by Defendants were medically acceptable in light of Plaintiff's allegations.

The Court, therefore, is unable to decide the matter of qualified immunity based solely on Plaintiff's complaint. Thus, the Court will recommend that Defendants' motion to dismiss on qualified immunity grounds be denied.

**D.      Official-Capacity Claims**

The Eleventh Amendment bars suits for money damages in federal court against state officials in their official capacity. *Aholelei v. Department of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). However, it does not bar official capacity suit for prospective relief, *Wolfson v. Brammer*, 616 F.3d 1045, 1065-66 (9th Cir. 2010); nor does it bar suit for damages against state officials in their personal capacities. *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). "A plaintiff seeking injunctive relief against the State is not

required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (internal citations omitted). However, the official "must have some connection with the enforcement of the act," and that connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Ex parte Young*, 209 U.S. 123, 157 (1908); *Hafer*, 502 U.S. at 25 (internal citations omitted) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law.'") *Hafer,* 502 U.S. at 25.

The Court notes that it previously found that Plaintiff failed to state a claim for prospective injunctive relief against Health Care CEO Raul Recarey, Warden Landon Bird, and Secretary Kathleen Allison in their official capacities. (ECF No. 21 at 13). The Court noted that Plaintiff failed to allege that "the other defendants' medical care, or lack thereof, [was] due to any unconstitutional policy of Recarey, Bird, or Allison" and "[w]ithout any such claims, Plaintiff is not entitled to injunctive relief against those individuals." (*Id.* at 13-14).

Plaintiff's operative complaint alleges that Dr. Sandhu is his current doctor and sues him in his official capacity only. (ECF No. 29 at 2). Since Plaintiff's claim for medical treatment is prospective, official capacity claims would be allowed.

Here, the gravamen of Plaintiff's complaint is that he has been subjected to the deliberate indifference of VSP medical staff to his serious medical condition. He seeks prospective relief to receive effective medical treatment to address his condition. Here, the Court finds that Plaintiff sufficiently alleges his constitutional rights have been violated based on the denial of his requests for back surgery and the denial or delay of his requests for effective pain management. Liberally construing Plaintiff's complaint and submitted health care responses, the decision to deny these requests or to initially deny these requests was made pursuant to the relevant CDCR health care regulations and policies. *See Gray v. Khoo*, No. 1:20-cv-01047-SAB (PC), 2022 WL 3020120, at *2 (E.D. Cal. Jul. 29, 2022) ("([T]he Court agrees that Plaintiff may proceed against

the current Chief Medical Officer, Doctor Ola, in his/her official capacity for any prospective injunctive relief based on the ongoing and continued denial of lumbar fusion revision surgery. Plaintiff has alleged that she was denied revision surgery despite the medical need and failure to follow the policy as to the applicable criteria. Drawing all reasonable inferences in favor of Plaintiff, the Court finds that she has pleaded sufficient facts to allow the Court to reasonably infer that official policies or customs played a part in the constitutional violations she alleges.").

Plaintiff also alleges that Dr. Sandhu, as Plaintiff's current physician, is able to order the surgery and medications for Plaintiff. Defendants assert that Dr. Sandhu does not have the authority to implement the requested relief and is also no longer Plaintiff's doctor as Plaintiff is no longer confined at VSP. (*See* ECF No. 43 at 23-24; ECF No. 48 at 8). However, Defendants do not offer any support for these assertions.  Moreover, if true, the remedy would be to substitute Plaintiff's current doctor.  Lewis v. Clarke 581 U.S. 155, 162 (2017) ("This is why, when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation. *Hafer,* 502 U.S., at 25, 112 S.Ct. 358. The real party in interest is the government entity, not the named official.").

Accordingly, the Court will recommend that Defendants' motion to dismiss be denied to the extent that Defendants seek to dismiss Plaintiff's official capacity claim against Dr. Sandhu.

### E.    State Law Claims

Because the Court finds that Plaintiff has sufficiently alleged facts giving rise to cognizable claims for deliberate indifference against Dr. Son, Dr. Mevi, and Dr. Longia, the Court also finds that Plaintiff sufficiently alleges cognizable claims for medical negligence against Dr. Son, Dr. Mevi, and Dr. Longia.

Defendants' motion argues that Plaintiff's state law claims must be limited in scope to allegations that occurred before December 22, 2021, and thus Plaintiff has not exhausted his claims against Dr. Eskander and Dr. Sandhu, whom he only alleges interacting with "sometime after November 2022 and in 2023." (ECF No. 43 at 22-23). However, as Plaintiff points out in opposition, Plaintiff's state law claims are only alleged against Dr. Son, Dr. Mevi, and Dr. Sandhu. Defendants' reply argues that Plaintiff's government law claim is insufficient to exhaust his claims under state law against Dr. Longia because Dr. Longia is not specifically named in the

claim. (ECF No. 48 at 4). Defendants further argue that Plaintiff's state law claims against Dr. Son and Dr. Mevi must also be dismissed because, despite being named in Plaintiff's claim, the claim does not "allege with any particularity facts to establish each Defendant's involvement." (*Id.* at 5). Defendants' request judicial notice of Plaintiff's government claim. (ECF No. 49).

The California Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues.[7] Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. *State v. Superior Court of Kings County (Bodde)*, 32 Cal.4th 1234, 1239 (Cal. 2004); *Shirk v. Vista Unified School District*, 42 Cal.4th 201, 209 (2007). The claim shall include the following information: (1) the name and post office address of the claimant; (2) the post office address to which the person presenting the claim desires notices to be sent; (3) the date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted; (4) a general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim; (5) the name or names of the public employee or employees causing the injury, damage, or loss, if known; and (6) the amount claimed in damages if less than $10,000. Cal. Gov't Code § 910.

"Where a submitted claim is deficient in some way, but the claim substantially complies with all of the statutory requirements, the doctrine of 'substantial compliance' in some cases may validate the deficient claim." *Gen. Sec. Servs. Corp. v. County of Fresno*, 815 F. Supp. 2d 1123, 1133 (E.D. Cal. 2011) (Ishii, J.) (citing *Sparks v. Kern Cty. Bd. of Supervisors*, 173 Cal. App. 4th 794, 800 (5th Dist. 2009)). "However, the doctrine of substantial compliance cannot cure the 'total omission of an essential element from the claim, or remedy a plaintiff's failure to comply meaningfully with the statute.'" *Id.* (citations omitted). The purpose of section 910 is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *City of San Jose v. Superior Court*, 12

---

[7] California courts refer to the California Tort Claims Act as the California Government Claims Act. *See City of Stockton v. Sup. Ct.*, 42 Cal. 4th 730, 741-42 (2007).

Cal. 3d 447, 455 (1974). "[T]he statute should not be applied to snare the unwary where its purpose is satisfied." *Gen. Sec. Servs. Corp.*, 815 F. Supp. 2d at 1133.

As an initial matter, the Court grants Defendants' request for judicial notice of Plaintiff's government claims notice. (ECF No. 49). Fed. R. Evid. 201. Courts routinely conclude that government claims are proper subjects of judicial notice. *See, e.g.*, *Ramachandran v. City of Los Altos*, 359 F. Supp. 3d 801, 811 (N.D. Cal. 2019) (taking judicial notice of a government claim filed pursuant to the California Government Claims Act).

Here, Plaintiff's government claim (#21005914), which was rejected on December 22, 2021, states that "CDCR Dr. Son, Dr. Mevi" are the state agencies or employees against whom the claim is filed. (ECF No. 49-1 at 2, 4). Plaintiff states the injury has been "ongoing since 7-21-2016." Plaintiff further states that he has "suffered every day since 2016," that the incident occurred at RJD and VSP, that his "lower back need[s] surgery and all hardware removed," that the circumstances leading up to his complaint include "inadequate medical [negligence] of CDCR by no providing what specialist Dr. Yoo said I needed," and that he believes the state is responsible for his injury "by not following Dr. Yoo['s] specialist recommendation." (*Id.* at 4).

These allegations in the government claim provide the public entity at issue, i.e., CDCR, with sufficient information to enable it to conduct an adequate investigation. *See City of San Jose*, 12 Cal. 3d at 455. Moreover, while the Third Amended Complaint may contain additional theories of liability not listed in the government claim, those theories are based on the same factual foundation as those in the government claim, i.e., that Plaintiff is suffering from extreme back pain and is not being provided adequate care. *See Gen. Sec. Servs. Corp.*, 815 F. Supp. 2d at 1134 (quoting *Dixon v. City of Livermore*, 127 Cal. App. 4th 32, 40, 42 (2005) ) ("[I]t is permissible to plead additional theories where the 'additional theories [are] based on the same factual foundation as those in the claim.'"). Thus, the government claim put CDCR on notice to investigate whether prison doctors, including Dr. Mevi, Dr. Son, and Dr. Longia, were providing adequate medical treatment to address Plaintiff's health concerns.

Accordingly, the Court finds that Plaintiff has substantially complied with the Government Claims Act, and thus, Plaintiff's medical negligence claims against Dr. Mevi, Dr. Son, and Dr. Longia are not barred. *See M.B. by and though Beverly v. California Dep't of Corr.*

& *Rehab.*, No. 2:17-cv-2395 WBS DB 2018 WL 4050743, at *5 (E.D. Cal. Aug. 23 2018), *vacated, in part, on reconsideration on other grounds*, 2018 WL 5024093 (E.D. Cal. Oct. 16, 2018).

Thus, the Court will recommend that Defendants' motion to dismiss Plaintiff's state law claims be denied.

## VI.   REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF[8]

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 135 S. Ct. 2726, 2736-37 (2015) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "[P]laintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In addition to establishing irreparable harm, the injunctive relief sought must be related to the claims brought in the complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."). A permanent injunction may be granted only after a final hearing on the merits. *See MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir.1993) ("As a general rule, a permanent injunction will be granted when liability has been established ....").

Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *See*

___

[8] Plaintiff requests a temporary restraining order *or* preliminary injunction. (*See* ECF No. 29-2; ECF No. 47 at 25). Although the standard for obtaining a temporary restraining order and a preliminary injunction is identical, they serve fundamentally different purposes. Preliminary injunctions remain in force throughout the litigation, whereas provisional temporary restraining orders are traditionally more limited in time – "restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974). When, as here, the party seeks interim relief that requires a defendant to take affirmative action (as opposed to refrain from taking action), the movant's burden "is doubly demanding," and he "must establish that the law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed" on the merits. *Garcia v. Google, Inc.*, 786 F.3d 733, 741 (9th Cir. 2015).

26

*Gilmore v. People of the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000) (the PLRA places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and courts may not grant "relief that binds prison administrators to do more than the constitutional minimum").

Here, as discussed above, while Plaintiff has sufficiently alleged facts giving rise to a cognizable claim for deliberate indifference, it is unclear to the Court at this early stage that Plaintiff is likely to succeed on the merits of his claims. Accordingly, the Court will recommend that Plaintiff's request for preliminary injunctive relief be denied.

## VII.   CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, IT IS ORDERED that:

1.   Defendants' request for judicial notice of Plaintiff's government claims notice, (ECF No. 49), be GRANTED.

Additionally, IT IS RECOMMENDED that:

2.   Defendants' motion to dismiss (ECF No. 43) be DENIED.

3.   Plaintiff's request for temporary restraining order and/or preliminary injunction (ECF No. 29-2) be DENIED.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __July 31, 2024__                          __/s/ Erica P. Grosjean__
                                                     UNITED STATES MAGISTRATE JUDGE