UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN HAGAN,<br>Plaintiff,<br>v.<br>RAUL RECAREY, *et al.*,<br>Defendants. | Case No. 1:22-cv-00562-JLT-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART<br><br>(ECF No. 128)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Plaintiff Kevin Hagan is a state prisoner now proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983.[1]

In his Third Amended Complaint, Plaintiff alleges that Defendant Joseph Bick[2], Director of Health Care Services for California Correctional Health Care Services ("CCHCS"), along with Defendants Harminder Longia, Monivirin Son, Jason Mevi, and Happy Eskander, physicians at Valley State Prison ("VSP"), failed to provide Plaintiff with medical treatment that is needed to address his chronic back pain, including a back surgery that was recommended by an outside specialist and adequate pain management in the form of opioid pain medication. (*See* ECF No.

[1] Plaintiff was represented by counsel when he filed his initial complaint, along with the second and third amended complaints. After conducting a hearing, the Court granted the motion to withdraw as Plaintiff's counsel on October 18, 2024. (ECF No. 67).

[2] Dr. Bick was substituted in his official capacity for Defendant Sandhu, who was also sued in his official capacity. (ECF No. 105).

29). Based on these allegations, Plaintiff asserts claims under the Eighth Amendment for deliberate indifference to a serious medical need against Dr. Bick, in his official capacity, and Drs. Son, Mevi, Eskander, and Longia. (*Id.* at 20-22). Plaintiff also asserts state law claims for medical negligence against Drs. Son, Mevi, and Longia. (*Id.* at 22-23).

Defendants move the Court for summary judgment, arguing that the evidence shows that they did not violate the standard of care, were not deliberately indifferent to Plaintiff's serious medical needs, and are entitled to qualified immunity. (ECF No. 128).

For the reasons explained below, the Court recommends Defendants' motion for summary judgment be granted in part and denied in part.

## I. BACKGROUND[3]

During the events at issue, Plaintiff was an inmate at VSP. Plaintiff's Third Amended Complaint (operative complaint), (ECF No. 29), alleges that Defendants failed to order back surgery recommended by an outside neurology specialist and failed to prescribe adequate pain management that sufficiently addressed his severe back pain. (*See id.*).

Based on these allegations, Plaintiff asserts claims under the Eighth Amendment for deliberate indifference to serious medical needs against Drs. Longia, Son, Mevi, and Eskander in their individual capacities. (*Id.* at 2, 20-22). Drs. Son, Mevi, and Eskander are primary care providers ("PCP") who separately treated Plaintiff at VSP for chronic back pain over a period of nearly three years, from August 2020 through March of 2023. (ECF Nos. 128-4, 128-6, 128-10). Dr. Longia reviewed several of Plaintiff's healthcare grievances about pain medication and surgery and sent him responses. (ECF No. 128-5).

Plaintiff also asserts state law claims for medical negligence against Drs. Son, Mevi, and Longia. (*Id.* at 22-23).

Plaintiff sues Dr. Bick in his official capacity as the Director of Health Care Services at CCHCS for deliberate indifference to serious medical needs for failing to authorize back surgery and pain medication. (ECF No. 105). Dr. Bick was substituted as a defendant in this case because, in connection with a previous motion for injunctive relief, Defendants represented that Dr. Bick

---

[3] For readability, minor alterations to some of Plaintiff's quoted excerpts have been made throughout, such as to spelling and punctuation, without noting each alteration.

was the official capable of responding appropriately to a court injunction—that is, the official who would be responsible for ensuring that the injunctive relief was carried out. *See Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (recognizing that a plaintiff seeking injunctive relief needs to, *inter alia*, "name the official within the entity who can appropriately respond to injunctive relief"). Specifically, Defendants represented that:

> [C]ases have further found that where a plaintiff seeks prospective injunctive relief, the proper defendant is the official capable of responding appropriately to a court injunction—that is, the official who would be responsible for ensuring that the injunctive relief was carried out. *See Hartmann* 707 F.3d at 1127 (recognizing that a plaintiff seeking injunctive relief needs to, *inter alia*, "name the official within the entity who can appropriately respond to injunctive relief"); *Pouncil v. Tilton,* 704 F.3d 568, 576 (9th Cir. 2012) (internal citation omitted), *cert. denied* 571 U.S. 820 (2013); *McQueen v. Brown*, No 2:15-cv-2544 JAM AC P, 218 WL 1875631, at *4 (E.D. Cal. Apr. 19, 2018)1 (CDCR Secretary considered appropriate defendant in official capacity because he could respond to order granting injunctive relief despite having no personal involvement in alleged constitutional violations). Under this logic, Defendants believe that Joseph Bick, the Director of Health Care Services for CCHCS, is the appropriate person to substitute for Dr. Sandhu. In this role, [Dr.] Bick is the head of all health care provided to incarcerated individuals in CDCR's custody. [Dr.] Bick's title is also above all members of the Statewide Medical Authorization Team (SMART) Committee (SMART Committee), which has previously denied requests for Plaintiff to undergo back surgery. The SMART Committee, for its part, requires a minimum number of members, but the individual members included are frequently changing based on title changes and availability.

(ECF No. 99 at 2-3).

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Defendants' Motion

Defendants filed a motion for summary judgment on March 23, 2026. (ECF No. 128). Defendants argue that they were not deliberately indifferent to Plaintiff's serious medical needs, that they were not medically negligent, and that they are entitled to qualified immunity. (*Id.*).

Defendants support their motion for summary judgment with the following: (1) a Statement of Undisputed Facts; (2) declarations from Drs. Son, Mevi, Eskander, and Longia; (3) declarations from treating expert, Dr. R. Zhang, PCP, and Dr. P. Lee, chair of the Statewide Medical Authorization Team Committee ("SMART Committee"); (4) excerpts from Plaintiff's medical records, which were attached to Defendants' declarations; and (5) declaration of Deputy Attorney General Patricia M. Kealy, attaching excerpts from Plaintiff's deposition transcripts

from November 24, 2025 and December 10, 2025. (ECF Nos. 128-3 through 128-10).

Defendants argue that they were not deliberately indifferent in their treatment of Plaintiff's chronic pain because they prescribed the appropriate pain medications and followed recommendations of specialty review committees. (ECF No. 128 at 17-23).

Defendants argue that the decision to deny surgery was "solely within the control of the SMART Committee" and was never in their independent control. (*Id.* at 23). Defendants assert that "the decision to not pursue an eighth back surgery … was justified based on Plaintiff's overall medical condition and the risks associated with an eighth back surgery." (*Id.*).

Defendants further argue that "[t]o the extent that this Court determines Defendants did violate Plaintiff's Eighth Amendment rights in being deliberately indifferent to his serious medical needs, they are entitled to qualified immunity because they did not violate clearly established rights." (*Id.* at 27).

Finally, Defendants argue that Plaintiff has not submitted any expert opinion concluding that Defendants' conduct fell outside the community standard of care concerning treatment of Plaintiff's chronic pain and referrals to surgery. (*Id.* at 28).

**B. Plaintiff's Opposition**

Plaintiff filed his opposition to Defendants' motion for summary judgment on April 27, 2026. (ECF No. 133). In support of his opposition, Plaintiff submitted his declaration and his response to Defendants' Statement of Undisputed Facts.[4] (ECF No. 136 at 9-37).

In opposition, Plaintiff argues that Defendants lack a specialist who has opined contrary to Dr. Yoo's recommendation for surgery and that the SMART Committee's denial of his request for surgery was based on what Defendants said. (ECF No. 133 at 1). Plaintiff asserts that he "has suffered for years without adequate pain medication or the surgeries that Dr. Yoo and Dr. Farr said Plaintiff needs." (*Id.* at 1-2).

Plaintiff denies having an opioid use disorder and asserts that he lost 175 pounds after Defendants cited morbid obesity as a factor in their treatment decisions. (*Id.* at 2). Plaintiff argues

[4] Plaintiff sent his declaration and response to Defendants' Statement of Undisputed Facts directly to Defendants instead of filing them on the docket with his opposition brief. Defendants noted this and attached Plaintiff's declaration and his response to Defendants' Statement of Undisputed Facts as Exhibit A to their reply brief (ECF No. 136 at 9-37). The Court will consider Plaintiff's declaration and response to Defendants' Statement of Undisputed Facts as if Plaintiff had filed them with his opposition brief.

that he has received morphine or methadone in the past, and morphine is the only pain medication that has relieved his pain. (*Id.*; ECF No. 136 at 17).

**C. Defendants' Reply**

On May 18, 2026, Defendants filed their reply brief to Plaintiff's opposition to summary judgment. (ECF No. 136).

In their reply brief, Defendants confirm that "[t]he parties also do not dispute that Dr. Yoo recommended that Plaintiff undergo an eighth back surgery," however Defendants argue that any difference in medical opinion between medical professionals concerning what medical care is appropriate does not amount to deliberate indifference. (*Id.* at 2-3).

Defendants also argue that the SMART Committee based their decisions to deny an eighth back surgery on more than what Defendants told them, including the Committee members' review of his progress notes, scans, imaging of his spine, physical therapy notes, medication administration records, other medical file records, and Dr. Yoo's recommendation for surgery. (*Id.* at 4). "Therefore, despite Plaintiff's contentions, Dr. Yoo's recommendations for surgery were not ignored" but rather it "was the impetus for Defendant Mevi, in his role as the Chief Physician and Surgeon at [VSP], to route a Request for Services (RFS) for back surgery to the SMART Committee in 2022." (*Id.*).

As for Plaintiff's claims of inadequate pain management, Defendants argue that Plaintiff has not supplied expert evidence that morphine or Lyrica/Gabapentin are superior to any alternative medication. (*Id.* at 6). Defendants argue that Plaintiff's medical condition was not the same as when he was given morphine in the past for short-term treatment. Defendants assert that their decision not to provide opioid medication while other providers did constitutes a difference of opinion concerning a course of treatment that is not actionable under the Eighth Amendment. (*Id.* at 7).

Finally, Defendants argue that they submitted two non-party medical expert declarations in support of their motion for summary judgment, and these experts affirmed the reasonableness of Defendants' decisions to not pursue an eighth back surgery and to manage Plaintiff's pain through non-opioid medication. (*Id.* at 8). Moreover, Defendants assert that Dr. Yoo's medical note as to back surgery and pain management does not opine as to whether Defendants breached

the standard of care in treating Plaintiff. (*Id.*).

**III. RULE 56(F)**

The Court first addresses Plaintiff's alternative request to give him more time to respond to Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56(f). (ECF No. 133 at 3 ("I ask the Court to deny defendants' motion for summary judgment or let this be a motion for rule 56(f) and give plaintiff more time to respond to defendants' motion for summary judgment.")).

Rule 56(f) provides as follows:

> (f) Judgment Independent of the Motion. After giving notice and a reasonable time to respond, the court may:
> (1) grant summary judgment for a nonmovant;
> (2) grant the motion on grounds not raised by a party; or
> (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

The purpose of Rule 56(f) is to provide a device for litigants to avoid summary judgment where they have not had sufficient time to develop affirmative defenses. *Burlington Northern Santa Fe R. Co. v. The Assiniboine and Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir.2003). A Rule 56(f) motion must be brought before the summary judgment hearing. *See U.S. v. Kitsap Physicians Service*, 314 F.3d 995, 1000 (9th Cir.2002). The facts supporting the request for continuance must be set forth in an accompanying affidavit. *Id.* Failure to comply with either of these requirements is a proper basis for denying a Rule 56(f) motion. *Id.*

Here, the Court finds that the Rule 56(f) motion should be denied. First, the motion is not accompanied by an adequate affidavit making the required showing. Plaintiff's declaration in support of his opposition brief does not describe the specific facts he hopes to uncover, make any kind of showing that these facts actually exist, or indicate how the sought-after facts would defeat Defendants' motion for summary judgment. (ECF No. 136 at 10-12).

Next, Plaintiff's Rule 56(f) motion is not filed in response to an early motion for summary judgment brought before Plaintiff has had time to conduct discovery. To the contrary, the Court's January 21, 2025 Scheduling Order permitted discovery through September 21, 2025 (ECF No. 72), but the Court granted several motions to extend non-expert discovery until

December 25, 2025 (ECF Nos. 105, 108. 110). Plaintiff has not made an adequate showing as to why this was not sufficient time. Nor has Plaintiff demonstrated that he was diligent in pursuing discovery before the December 25, 2025 cut-off date.

Accordingly, the Court will recommend denying Plaintiff's alternative motion for more time to respond to Defendants' motion for summary judgment under Rule 56(f).

## IV. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). If the moving party does so, "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial," which is not a light burden, and the non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). The Court need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn"; the Court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). And "[t]he evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255. In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

**B. Deliberate Indifference to Serious Medical Needs**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the Defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotation marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (*en banc*).

The "second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted).

Thus, deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

Additionally, a difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi*, 391 F.3d at 1058. Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (*en banc*).

**C. State Law Medical Negligence**

To state a claim for medical negligence under California law, Plaintiff must establish "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Sampson v. Ukiah Valley Med. Ctr.*, 2017 WL 2834001, at *3 (N.D. Cal., June 30, 2017) (quoting *Machado v. Cal. Dep't of Corrs. and Rehab.*, 2013 WL 5800380, at *5 (N.D. Cal., Oct. 28, 2013) (quoting *Gami v. Mullikin Med. Ctr.*, 18 Cal. App. 4th 870, 877 (1993))).

> In California, medical personnel are held in both diagnosis and treatment to the degree of knowledge and skill ordinarily possessed and exercised by members of their profession in similar circumstances. This standard of care, which is the basic issue in malpractice actions, can be proven only by expert

> testimony. California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence. Given the expert evidence requirement, the plaintiff's allegations supported only by lay opinions fail to present a triable issue of fact concerning the applicable standard of care.

*Hutchinson v. United States*, 838 F.2d 390, 392–93 (9th Cir. 1988) (noting exception to expert requirement "when the type of conduct required by the particular circumstances is within the common knowledge of laymen") (internal citations omitted).

The Ninth Circuit has stated: "We agree that since California medical malpractice law applies, when the defendant supports his motion for summary judgment with the declarations of experts, a plaintiff who has presented no expert evidence concerning the required standard of care has failed to make a sufficient showing that there are genuine factual issues for trial." *Id.* at 393; *see also Daniels v. Kaiser Found. Hosps.*, No. 8:24-CV-00022-MEMF-JDE, 2026 WL 1196964, at *11 (C.D. Cal. Apr. 27, 2026) ("Under California law, when the material issues framed by the complaint are whether the conduct of a medical professional fell below the standard of care and proximately caused the plaintiff's injury, the plaintiff must use "expert testimony ... to establish the reasonable degree of skill, knowledge, and care ordinarily possessed and exercised by members of the medical profession under similar circumstances.") (quoting *Zaragoza v. Adam*, 330 Cal. Rptr. 3d 333, 337 (Cal. Ct. App. 2025), *review denied* (June 11, 2025) (internal quotation marks omitted)),

### D. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In determining whether defendants are entitled to qualified immunity, the Court must decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct,

*Pearson*, 555 U.S. at 232.

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2090 (2012) (quoting *Al–Kidd*, 563 U.S. at 741) (alteration in original), This immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

## V. ANALYSIS OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Defendants Sued in Individual Capacities

The Court begins by considering Plaintiff's claims against Defendants in their individual capacities for past damages for deliberate indifference to serious medical needs and medical negligence related to a failure to prescribe adequate pain medication and recommend that Plaintiff receive surgery for his back. Again, Drs. Son, Mevi, and Eskander are PCPs who separately treated Plaintiff at VSP for chronic back pain over a period of nearly three years, from August 2020 through March of 2023. (ECF Nos. 128-4, 128-6, 128-10). Dr. Longia reviewed several of Plaintiff's healthcare grievances about pain medication and surgery and sent him responses. (ECF No. 128-5).

Regarding these Defendants, their motion argues:

> Plaintiff's operative Complaint generally alleges that Drs. Eskander, Longia, Mevi, and Son violated his Eighth Amendment rights and that Drs. Longia, Mevi, and Son committed medical malpractice by not prescribing adequate pain medication for his chronic back pain and not ordering an eighth back surgery after previous failed surgeries. However, Defendants Eskander, Mevi, and Son appropriately prescribed non-opioid or low dose synthetic opioid medications and Gabapentin/Lyrica for Plaintiff's back condition based on the risks associated with prescribing stronger opioids—especially to a patient with respiratory compromising comorbidities and a history of substance abuse—and Plaintiff's objective presentation of pain. Dr. Longia likewise appropriately found no intervention was needed to address Plaintiff's health care grievances that requested stronger pain medication, based on the same factors. Further, no Defendant alone had the capacity to order and facilitate an eighth back surgery for Plaintiff. This decision was made by the Statewide Medical Authorization Team (SMART) Committee which twice justifiably denied an eighth back surgery for Plaintiff when it was not clinically indicated and the risks were not outweighed by the uncertain benefits.

(ECF No. 128-1 at 7).

As an initial matter, the Court recommends granting summary judgment for these defendants based on allegations related to failing to recommend or provide Plaintiff with back surgery. The undisputed facts confirm that Drs. Son, Mevi, Eskander, and Longia lacked the ability to provide Plaintiff with back surgery. (DSUF[5] 36; ECF No. 136 at 20) ("A patient's PCP cannot independently determine that a patient will undergo surgery...[t]hese determinations are made at the headquarters' level by the SMART Committee."). Moreover, as discussed further below, that surgery was independently evaluated and rejected by CDCR's SMART Committee based on reasons wholly independent from whether the individual Defendants recommended that surgery or not. (DSUF 91, 95; ECF 136 at 28-29 ("The SMART Committee determined that an eighth back surgery was not necessary in order to prevent death, permanent disability, or severe pain to Plaintiff" and "denied this RFS for the eighth back surgery for Plaintiff."); (DSUF 85; ECF 136 at 27 ("As part of their evaluation into this RFS, the SMART Committee reviewed progress notes from Plaintiff's PCP and other physicians, MRI scans, computed tomography (CT) and other imaging of Plaintiff's spine. The Committee also opened Plaintiff's medical chart and reviewed PT [physical therapy] notes, medication administration records, and miscellaneous provider notes regarding Plaintiff's back condition.")).

Thus, Plaintiff has failed to present a genuine issue of material fact as to whether individual defendants, Drs. Son, Mevi, Eskander, and Longia, were deliberately indifferent to his serious medical needs, or committed medical malpractice, with regards to CDCR's refusal to provide Plaintiff with back surgery.

Drs. Son, Mevi, and Eskander did, however, make decisions regarding providing Plaintiff with pain medication. The Court thus turns to the evidence and undisputed facts presented regarding the individual defendants' treatment of Plaintiff's pain with medication, including the following:

Plaintiff has chronic back pain and spinal disc disease stemming from a work related incident. (DSUF 8; ECF No. 136 at 15-16). Plaintiff began his current incarceration term in 2012, and since being incarcerated, and while under Defendants' care at VSP, Plaintiff has continuously

---

[5] "DSUF" refers to Defendants' Statement of Undisputed Facts as agreed by Plaintiff.

requested to be prescribed morphine. (DSUF 13, 14, 15; ECF No. 136 at 16).

As of August 20, 2020, Plaintiff was receiving Tylenol (acetaminophen) and Motrin (ibuprofen) for his back pain. (DSUF 45; ECF No. 136 at 21). Following his first appointment with Plaintiff, Dr. Son continued Plaintiff's ongoing pain management regimen of Tylenol and Motrin based on his review of Plaintiff's medical chart, the assessment of previous physicians to prescribe Tylenol and Motrin for Plaintiff's pain, and the limited assessment of Plaintiff that he was able to conduct during the appointment. (DSUF 46, 48; ECF No. 136 at 21).

The parties agree that:

> Dr. Son did not prescribe opioids to manage Plaintiff's chronic back following this appointment or any subsequent appointment because opioids were not clinically indicated for managing pain given the associated risks which included increased pain sensitivity.

(DSUF 50; ECF No. 136 at 22).

Following a November 3, 2020, appointment, Dr. Son continued to prescribe Tylenol for Plaintiff's pain and added capsaicin topical cream. (DSUF 53; ECF No. 136 at 22).

Dr. Mevi provided direct medical care to Plaintiff as his PCP at various times between February 24, 2021, and October 27, 2022, when Plaintiff was housed in the Outpatient Housing Unit recovering from respiratory failure secondary to COVID-19 pneumonia. (DSUF 60, 61; ECF No. 136 at 23). The parties agree that:

> Dr. Mevi's decisions regarding pain management modalities for Plaintiff were guided by his medical judgment, the recommendation of medical personnel consulted at the institutional and headquarters' level, and CCHCS' pain management care guidelines. These guidelines complied with the applicable standard of care for a physician prescribing pain medication at that time.

(DSUF 64 (internal citations omitted); ECF No. 136 at 24).

Dr. Mevi treated Plaintiff's chronic back pain with a variety of non-opioid pain management modalities, including Gabapentin (later changed to Lyrica), Duloxetine, nonsteroidal anti-inflammatory drugs (NSAIDs) such as Naprosyn and ibuprofen, Tylenol, capsaicin topical ointment, and lidocaine patches. (DSUF 67; ECF No. 136 at 24).

As of March 11, 2021, Plaintiff was receiving Gabapentin 300 mg three times daily and capsaicin topical cream to address his chronic back pain. (DSUF 79; ECF No. 136 at 26). Dr. Mevi also doubled Plaintiff's Naprosyn medication. (DSUF 80; ECF No. 136 at 26),

Dr. Eskander was Plaintiff's PCP between approximately November 3, 2022 and March 10, 2023. (DSUF 97; ECF No. 136 at 29). Following his first appointment, Dr. Eskander continued Plaintiff's current pain management regimen of Tramadol (a synthetic opioid) 50 mg twice daily, Lyrica 300 mg twice daily, Tylenol (acetaminophen) 325 mg twice daily, and Duloxetine 20 mg daily. (DSUF 100; ECF No. 136 at 29). "Dr. Eskander's decision was based on his review of Plaintiff's medical chart and determination that Plaintiff was able to perform his ADLs [activities of daily life] without assistance." (DSUF 101; ECF No. 136 at 30).

On November 30, 2022, Dr. Eskander adjusted Plaintiff's pain medication regimen based on recommendations made during an October 14, 2022 Care Team Enhanced Conference ("CTEC")[6], including increasing certain non-opioid medication and tapering Tramadol, as a synthetic opioid. (DSUF 104, 105; ECF No. 136 at 30). "The CTEC recommended that Plaintiff's Tramadol be decreased based on the nature of Plaintiff's pain, which was chronic, and the preference not to treat chronic pain with opioids due to the associated risks of habituation, respiratory depression, overdose, and death." (DSUF 106; ECF No. 136 at 30).

On December 16, 2022, Dr. Eskander again adjusted Plaintiff's pain medication regimen in accordance with CTEC's recommendations. (DSUF 107; ECF No. 136 at 31). Dr. Eskander adjusted Plaintiff's pain medication regimen a third time based on recommendations made following a March 2, 2023 MAT evaluation to determine whether Plaintiff would be a good candidate for Suboxone (buprenorphine/naloxone). (DSUF 108, 109; ECF No. 136 at 31).

The parties agree that:

> Dr. Eskander did not prescribe stronger non-synthetic opioids, such as morphine, to manage Plaintiff's chronic back pain following this appointment or any subsequent appointment because of the potential risks which included habituation, respiratory depression, overdose, and death. Further, this type of medication was never recommended by a CTEC or PMC[7] during Dr. Eskander's time as Plaintiff's PCP.

---

[6] A Care Team Enhanced Conference ("CTEC") is a multidisciplinary review that evaluates complex cases and provides a consensus recommendation regarding treatment, including opioid use. (DSUF 26; ECF No. 136 at 18).

[7] A Pain Management Committee (at times, "PMC") may be convened to evaluate complex pain cases and recommend appropriate treatment options, including whether opioid therapy is indicated. (DSUF 24; ECF No. 136 at 18). At the conclusion of a PMC, the PMC participants vote as to whether or not they believe a particular pain management modality, including a prescription for opioids, is indicated and necessary to address the patient's pain. (DSUF 25; ECF No. 136 at 18).

(DSUF 103; ECF No. 136 at 30).

Dr. Longia never provided direct patient care to Plaintiff. (DSUF 115; ECF No. 136 at 32). Instead, Dr. Longia's involvement in Plaintiff's medical care was limited to reviewing and responding to at least six of Plaintiff's health care grievances. (DSUF 116-133; ECF No. 136 at 32-35). In each response, Dr. Longia described the dates of each treatment visit at issue, Plaintiff's concerns expressed at each visit, the PCP's response to those concerns and treatment plan, along with the results of any additional care sought like physical therapy or imaging. (DSUF 116-133; ECF No. 136 at 32-35). The parties agree that:

> Dr. Longia's evaluations of Plaintiff's grievances and responses complied with the applicable standards of care for physicians prescribing medication and evaluation [of] chronic pain issues at the time.

(DSUF 134; ECF No. 136 at 35).

As of July 2025, Plaintiff was no longer housed at VSP. (DSUF 138; ECF No. 136 at 36). After leaving VSP, Dr. Zhang was Plaintiff's PCP from approximately May 30, 2025, through December 10, 2025. (ECF NO. 128-9 at 2). As of July 7, 2025, Dr. Zhang prescribed morphine for the management of Plaintiff's chronic back pain. (DSUF 138; ECF No. 136 at 36).

Additionally, Defendants submitted the declaration of treating medical expert, Dr. Zhang, whom Plaintiff called a "great doctor," (ECF No. 136 at 35) and who opined that Defendants complied with the applicable standard of care for physicians treating chronic back pain:

> Based on my knowledge of Mr. Hagan's medical history—including, but not limited to, his chronic back pain condition and spinal stenosis, other medical conditions, medications and modalities previously prescribed to manage this pain and previous failed treatments, his history of noncompliance with medical care, and his history of substance use, my personal experience treating Mr. Hagan's chronic pain condition as his PCP, my knowledge and understanding of the requirements for physicians under Title 15, and my medical education and background, previous providers, including those who cared for Mr. Hagan at VSP, appropriately managed Mr. Hagan's chronic back pain based on numerous factors impacting their evaluations of Mr. Hagan's pain at the time of care and these providers had complied with the applicable standard of care for physicians treating chronic back pain.

(ECF No. 128-9 at 3).

Thus, the undisputed facts confirm that Drs. Son, Mevi, and Eskander did not prescribe opioid pain medication because of the risks to Plaintiff at the time of treatment and not because

they were indifferent to his pain and medical condition. *(See e.g.*, ECF No. 128-10 at 24). Plaintiff does not dispute that Drs. Son, Mevi, and Eskander prescribed other methods to relieve pain, including Tylenol, Motrin, Naprosyn, Tramadol, Gabapentin, Lyrica, capsaicin cream, and consult to a dietitian. Drs. Son, Mevi, and Eskander adjusted dosages and changed the medications depending on Plaintiff's examination findings at each visit and his reported symptoms.

While Plaintiff may have received morphine for a time after each of his seven back surgeries and while he was on a ventilator in the ICU for COVID-19 complications, Plaintiff has not presented evidence that any Defendant evaluated Plaintiff under the same limited conditions and refused to prescribe opioid medication. To the contrary, Plaintiff agrees that Drs. Son, Mevi, and Eskander considered the risks to Plaintiff, including death, of prescribing opioid medication to treat chronic pain. (DSUF 106, 136; ECF No. 136 at 30, 35).

Construing the evidence in a light most favorable to Plaintiff, he fails to demonstrate evidence that Drs. Son, Mevi, Eskander, or Longia subjectively knew and disregarded an excessive risk to Plaintiff's health and safety. Rather, Plaintiff's evidence demonstrates a disagreement with his providers over the type of prescription medication he should receive. This difference of opinion is not a constitutional violation. *Sanchez*, 891 F.2d at 242; *Toguchi*, 391 F.3d at 1058.

In reviewing Plaintiff's opposition brief and evidence, he has not provided a medical expert opinion stating that any Defendant breached the standard of care regarding provision of pain medication. Nor has he provided any evidence that any medical professional recommended that he receive a higher level of pain medication than he received.

Accordingly, Plaintiff has failed to make a sufficient showing that there are genuine factual issues for trial that the individual defendants were deliberately indifferent to his serious medical needs, or committed medical malpractice, in failing to prescribe opioids or any other higher level of pain medication to treat his chronic pain.

### B. Official Capacity Claims Against Dr. Bick, CCHCS Director of Health Care Services

The Court next considers Plaintiff's claim of deliberate indifference to serious medical

needs against Dr. Bick, in his official capacity as Director of Health Care Services for CCHCS with responsibilities over the SMART Committee. Plaintiff seeks prospective injunctive relief in the form of an order for an eighth back surgery and opioid pain medication. As described above, Defendants have conceded that Dr. Bick has the ability to authorize this surgery.

In their motion for summary judgment, Defendants argue:

> Finally, Plaintiff sues Dr. Joseph Bick, the Director of Health Care Services for the California Correctional Health Care Services (CCHCS) in his official capacity for prospective injunctive relief to receive optimized pain medication and an eighth back surgery. Plaintiff's claim for injunctive relief must fail because, since initiating this lawsuit, he has been prescribed the opioid medication of his preference—morphine—and the SMART Committee has considered a second request for an eighth back surgery. Therefore, Defendants are entitled to judgment as a matter of law as to Plaintiff's Eighth Amendment deliberate indifference claims and state law medical malpractice claims.

(ECF No. 128-1 at 7).

To begin with, the Court agrees that Dr. Bick is entitled to summary judgment regarding the pain medication allegation because it is undisputed that Plaintiff is now receiving morphine to treat his chronic back pain. (ECF No. 106 at 7; ECF No. 128-9 at 3). Thus, Plaintiff has already received the relief he is seeking in his request for an injunction against Dr. Bick regarding pain medication. (ECF No. 29 at 21).

The Court has reviewed the evidence and undisputed facts presented regarding this claim, including the following:

Plaintiff underwent seven lumbar fusion surgeries before being incarcerated to address his chronic back pain and spinal disc disease stemming from a work related incident. (DSUF 8; ECF No. 136 at 15-16).

Dr. Farr, also an outside specialist in orthopedic surgery, examined Plaintiff on August 28, 2020 and concluded that surgical "removal of hardware [on Plaintiff's spine] could be helpful." (ECF No. 29-5 at Ex.025).

On March 10, 2021, Dr. Mevi submitted an RFS for repeat MRI of Plaintiff's lumbosacral spine as part of an evaluation for potential surgery. (DSUF 75; ECF No. 136 at 25-26). An RFS is a request a PCP can submit if he or she "believes that a medical procedure or other specialty

service is reasonable and warranted." (ECF No. 128-8 at 2-3).

This RFS for an MRI was discussed with a Pain Management Committee, which had the consensus view that surgical intervention was not indicated for Plaintiff given his history of seven previous failed back surgeries and because he was not a surgical candidate given his comorbidities, particularly his multifactorial respiratory compromise. (DSUF 76; ECF No. 136 at 26). The Pain Management Committee recommended electromyography (EMG) testing be completed to provide a more functional assessment to evaluate treatment options for Plaintiff's pain. (DSUF 77; ECF No. 136 at 26).

On July 11, 2022, in his role as the Chief Physician and Surgeon ("CP&S") at VSP, Dr. Mevi routed an RFS for an eighth back surgery to the SMART Committee. (DSUF 81; ECF No. 136 at 26). The requested fusion surgery is considered a major surgery that would have involved removing the damaged disc between two of the vertebrae in Plaintiff's back and then fusing the vertebrae together. (DSUF 83; ECF No. 136 at 27). Dr. Mevi's declaration states:

> On July 11, 2022, in my role as the CP&S, I routed an RFS for consideration of an eighth back surgery for Plaintiff that had been submitted by his PCP to the next level of review - the Statewide Medical Authorization Review Team (SMART) Committee. Between March 2021, when the RFS for MRI imaging of Plaintiff's back was denied, and July 2022, Plaintiff was considered more clinically stable although still a higher risk candidate for surgery based on his comorbidities. Therefore, at that point in time, it was considered more appropriate for surgery to be considered.

(ECF No. 128-6 at 10).

"The SMART Committee determined that an eighth back surgery was not necessary in order to prevent death, permanent disability, or severe pain to Plaintiff" and denied the RFS for the eighth back surgery. (DSUF 91, 95; ECF 136 at 28-29).

In support of his motion for injunctive relief, Plaintiff submitted a Physician Note from Doctor Frank Kevin Yoo from Tri-City Medical Center dated December 12, 2024. (ECF No. 76). The note states as follows:

> History of Present Illness:
>
> This 54-year-old male is here for a follow-up visit. He is well-known to me who had L3-S1 interbody and instrumented fusion who had developed severe adjacent disc disease. We had previously requested surgical treatment

> and this had not been approved. I met with 1/23/2023 and requested authorization for L2-3 lateral lumbar interbody fusion, T9 to pelvis posterior instrumented fusion, L1-2 and L2-3 laminectomies. Kevin remains highly symptomatic with adjacent disc disease at L2-3. He would still like to proceed with surgical treatment.
>
> Physical Exam:
> He still has significant intractable back pain.
> Medical Decision Making:
> 1. The patient is still symptomatic and would like to proceed with surgery. Therefore, I request again authorization for L2-3 lateral lumbar interbody fusion, T9 to pelvis posterior instrumented fusion, L1-2 and L2-3 laminectomies.

(ECF No. 76 at 9).

As of July 2025, Plaintiff was no longer housed at VSP. (DSUF 138; ECF No. 136 at 36). After leaving VSP, Dr. Zhang was Plaintiff's PCP from approximately May 30, 2025, through December 10, 2025. (ECF NO. 128-9 at 2). Dr. Zhang assessed that several of the previous factors and circumstances impacting Plaintiff's chronic back pain and treatment options had changed including: 1) while still diagnosed with COPD, Plaintiff was no longer dealing with the respiratory compromising conditions that previously left him oxygen-dependent; 2) Plaintiff allowed Dr. Zhang to examine him during appointments and rarely refused the medications he prescribed when they were administered; 3) Plaintiff had multiple recent negative urinary toxicology screenings; 4) Plaintiff's back pain appeared to be getting worse and having a significant impact on his ability to perform activities of daily life; and 5) Plaintiff was no longer considered morbidly obese.[8] (ECF No. 128-9 at 3-4). A June 2025 MRI showed Plaintiff's lumbar spine had severe spinal stenosis. (*Id.* at 4).

Because of these changes in Plaintiff's condition, Dr. Zhang submitted another RFS to the SMART Committee for an eighth back surgery. (*Id.*; DSUF 138; ECF No. 136 at 36). The SMART Committee again denied the RFS. (*Id.*).

Thus, it is undisputed that an outside specialist recommended the surgery and that two of Plaintiff's PCPs submitted an RFS surgery, but that the SMART Committee denied the requests.

Regarding the SMART Committee's reason for denying the requests for surgery,

[8] Plaintiff states in his opposition brief that he lost 175 pounds. (ECF No. 133 at 2).

Defendants' motion states:

> Nevertheless, the SMART Committee denied this RFS for an eighth back surgery based on a number of factors, one of the biggest being the fact that between the 2022 RFS and 2025 RFS, Plaintiff's back condition did not change—Plaintiff continued to independently perform his ADLs and program on a GP yard, and the hardware in Plaintiff's back remained intact. (DUF Nos. 139- 140.)
>
> Furthermore, the SMART Committee assessed that an eighth back surgery for Plaintiff remained unjustified under Title 15 requirements because this surgery was not necessary in order to prevent permanent disability, death, or severe pain to Plaintiff. (DUF No. 140.) Plaintiff was already wheelchair-bound, and it was assessed that Plaintiff was not currently experiencing severe pain as he was able to independently perform his ADLs without distress. (*Id.*)

(ECF No. 128-1 at 25). Moreover, Defendants submitted the declaration of P. Lee, the Chair of the SMART Committee since approximately May 2020, (ECF No. 128-8), which states in part:

> The SMART Committee also assessed that an eighth back surgery on Mr. Hagan was not justified by the requirements under Title 15 of the California Code of Regulations, which instructs that reasonable medical care be provided to prevent death or permanent disability and to prevent severe pain. Here, the SMART Committee reviewed medical notes from Mr. Hagan's visits with his PCP and evaluating neurosurgeon and other medical records, all of which suggested that Mr. Hagan was not currently experiencing severe pain to the point that he was unable to function independently or perform his ADLs. The Committee gathered from these records that Mr. Hagan can function independently without distress, e.g., by wheeling himself into medical examination rooms without assistance and then proceeding to have reasonable discussions with medical staff. Further, all records indicated that Mr. Hagan is performing his ADLs without issue and stated to providers on numerous occasions that his ADLs were not impaired. All of this indicated to the Committee that while Mr. Hagan was in pain, it was being controlled with other modalities (e.g., medication, weight loss).
>
> In comparing this RFS to the 2022 RFS for an eighth back surgery, the SMART Committee assessed that Mr. Hagan continued to independently perform his ADLs, he was functioning well and able to be housed in a General Population (GP) yard as opposed to a medical housing unit, and he was able to transport himself, albeit via wheelchair, to accomplish his daily needs (e.g., attending chow). Although Mr. Hagan was experiencing pain while completing the aforementioned tasks, his overall condition had not dramatically changed since 2022. Further, under Title 15, an eighth back surgery remained unjustified as the surgery was not necessary in order to prevent death, permanent disability, or severe pain. While Mr. Hagan had

> lost weight between 2022 and 2025, this likely improved his overall condition and contributed to his ability to continue to perform his ADLs and program on a GP yard. The SMART Committee also determined that the hardware that was currently in Mr. Hagan's back remained intact and did not warrant another back surgery at this time.

(ECF No. 128-8 at 8-9).

After reviewing this evidence, the Court recommends denying summary judgment as to Plaintiff's claims for deliberate indifference to serious medical needs as to Dr. Bick, requesting prospective injunctive relief because the Court finds there is a genuine dispute of fact regarding whether the SMART Committee, which ultimately reports to Dr. Bick, is being deliberately indifferent to Plaintiff's serious medical needs in not authorizing Plaintiff's back surgery.

Again, Plaintiff has submitted evidence that an outside neurologist recommended this surgery on two occasions based on his in-person evaluation of Plaintiff. (ECF No. 128-8 at 5, 8). Plaintiff has also submitted evidence that two PCPs, one of which was also the Chief Physician and Surgeon at VSP at the time, believed that this surgery was reasonable and warranted. While Dr. Bick has submitted evidence that a committee of medical professionals believed otherwise, the Court finds that this is not undisputed evidence warranting summary judgment in Dr. Bick's favor.

The Court has kept in mind the following direction from the Ninth Circuit:

> In deciding whether there has been deliberate indifference to an inmate's serious medical needs, we need not defer to the judgment of prison doctors or administrators. Nor does it suffice for correctional administrators wishing to avoid treatment simply to find a single practitioner willing to attest that some well-accepted treatment is not necessary. In the final analysis under the Eighth Amendment, we must determine, considering the record, the judgments of prison medical officials, and the views of prudent professionals in the field, whether the treatment decision of responsible prison authorities was medically acceptable.

*Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019) (cleaned up) (first quoting *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) and then quoting *Kosilek v. Spencer*, 774 F.3d 63, 90 n.12 (1st Cir. 2014)).

Here, to support its decision denying surgery, the SMART Committee said Plaintiff could perform his ADLs without severe pain and "without issue." (ECF No. 128-8 at 8-9). From the evidence presented, this is contrary to almost all medical findings. For example, Drs. Son, Mevi,

and Eskander all stated that Plaintiff continued to report having chronic pain throughout the day in his various activities. (*See e.g.*, ECF No. 128-10 at 10; ECF No. 128-6 at 7; ECF No. 128-4 at 6). Dr. Mevi submitted requests to the SMART Committee for a nerve conduction study and then surgery because of the severe and constant pain Plaintiff was experiencing throughout his day. (ECF No. 128-6 at 10). Dr. Yoo's medical note stated that Plaintiff has significant intractable pain, that is, pain that is difficult to control and manage throughout the day (ECF No. 76 at 9), and Dr. Zhang stated that Plaintiff was "experiencing quantifiable back pain with radiation to his legs" and his "back pain appeared to be getting worse and having a significant impact on his ability to perform[] ADLs." (ECF No. 128-9 at 2, 4). Dr. Zhang later concluded that, since the SMART Committee denied back surgery, morphine[9] was necessary to manage Plaintiff's severe back pain. (*Id.* at 4).

Additionally, Defendants have presented no evidence that the SMART Committee had another neurology or surgical assessment contrary to the opinions of Dr. Yoo or Dr. Farr. Nor have Defendants presented other medical assessments contrary to Dr. Yoo's finding that Plaintiff "still has significant intractable back pain," confirmed by radiographic studies, and that back surgery to address the pain is recommended. (ECF No. 76 at 9).

While physicians from multiple disciplines may be represented on the SMART Committee, there is no evidence presented that any of the physicians had a specialty in neurology, conducted an in-person examination of Plaintiff, prepared a contrary recommendation, or identified any incorrect finding or analysis made by Dr. Yoo.

In addition, some reasons the SMART Committee gave for denying surgery are no longer applicable. For example, Plaintiff lost significant weight and was recognized as no longer morbidly obese (ECF No. 128-9 at 4), and Plaintiff stopped using methamphetamine (*id.* at 3 (Dr. Zhang stated Plaintiff had a "history of methamphetamine use disorder in sustained remission.")).

The SMART Committee cited Plaintiff's past lack of participation in physical therapy and then surmised that Plaintiff would not participate in physical therapy in the future. However, there is no evidence that physical therapy helped in the past, or that Plaintiff would not participate in

[9] Dr. Zhang even described morphine is a "strong opioid and [] used for severe pain." (ECF No. 128-9 at 4).

the future to recover from surgery. To the contrary, Plaintiff stated that he was in "to[o] much pain to participate in physical therapy" but if he underwent surgery, he "would do everything [he] had to plus extra" to address recovery, and he points to his personal discipline to lose 175 pounds by controlling his diet. (ECF No. 136 at 23, 25, 27). He also notes his commitment to recovering after being admitted to the ICU on a ventilator from COVID-19 complications. (*Id.* at 23-24).

There is no evidence that physical therapy would have helped given the admitted severity of Plaintiff's back condition. In fact, Dr. Mevi stated that he "noted that while physical therapy (PT) improved Plaintiff's overall strength and mobility, his baseline chronic back pain remained largely unchanged." (ECF No. 128-6 at 7). Thus, a jury could find that this suggests the SMART Committee has created an improper justification for denying surgery for a nonmedical reason.

Accordingly, there is a genuine issue of material fact as to Plaintiff's claim for deliberate indifference to serous medical needs against Dr. Bick, in his official capacity, seeking prospective injunctive relief and the Court will recommend denying summary judgment as to Dr. Bick.

**C. Qualified Immunity**

The Court next addresses whether Dr. Bick is entitled to qualified immunity on Plaintiff's Eighth Amendment claim for deliberate indifference to serious medical needs.

Dr. Bick's argument for qualified immunity is based on the same reasoning as his underlying argument regarding the denial of back surgery, specifically that the eighth spine surgery was not authorized "in part, because it was not medically necessary under the guidelines contained in California Code of Regulations, Title 15," which requires reasonable medical care be provided to prevent severe pain, permanent disability, or death, (ECF No. 128-1 at 27; ECF No. 128-8 at 8),

It is clearly established that prison officials violate an inmate's Eighth Amendment rights if they are deliberately indifferent to an inmate's serious medical needs. *Jett*, 439 F.3d at 1096. Viewing the evidence in a light most favorable to Plaintiff, it is undisputed that Plaintiff was in "severe" and worsening pain without surgery (ECF No. 128-9 at 4) and that the only specialist to have personally examined Plaintiff repeatedly confirmed that surgery would assist Plaintiff with his back condition and help to alleviate his pain (ECF No. 128-8 at 5, 8; ECF No. 76 at 9).

The SMART Committee received requests for surgery in 2022 and 2025 from different

PCPs, along with two recommendations for surgery from a neurology specialist. (ECF No. 128-8 at 5, 8). Yet, as described above, the SMART Committee continued to deny surgery based on non-current medical factors, such as obesity and methamphetamine use, or patently inaccurate factors, such as Plaintiff not experiencing severe pain while performing ADLs.

Thus, a reasonable jury could find that the SMART Committee's denial was for nonmedical reasons. Every reasonable official would know that refusal to provide medical care to alleviate severe and worsening pain based on nonmedical reasons violates an inmate's Eighth Amendment rights.

Accordingly, Dr. Bick is not entitled to summary judgment on the issue of qualified immunity.

## VI. CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, IT IS RECOMMENDED that:

1. Plaintiff's motion for more time to respond to the motion for summary judgment under Federal Rule of Civil Procedure 56(f) (ECF No. 128) be **DENIED**.
2. Defendants' motion for summary judgment (ECF No. 128) be **GRANTED IN PART** and **DENIED IN PART** as follows:
   a. Summary judgment as to Plaintiff's claim for deliberate indifference in violation of the Eighth Amendment for failure to order surgery against Defendants Son, Mevi, Eskander, and Longia be GRANTED;
   b. Summary judgment as to Plaintiff's claim for deliberate indifference in violation of the Eighth Amendment for failure to prescribe morphine or other opioid medication against Defendants Son, Mevi, Eskander, Longia, and Bick be GRANTED;
   c. Summary judgment as to Plaintiff's claim for state law medical negligence against Defendants Longia, Son, and Mevi be GRANTED;
   d. Summary judgment as to Plaintiff's claim for deliberate indifference in violation of the Eighth Amendment for failure to order surgery against Defendant Bick, in his official capacity, be DENIED; and
   e. Summary judgment as to Defendant Bick's defense of qualified immunity be

DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 2, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE